CHARLES W. WALTERS v. JOHN A. RATLIFF, *Sheriff.*

(Filed June 30, 1900.)

1. PROBATE COURT—*Jurisdiction of.* The probate court has jurisdiction of an action in replevin against a sheriff to recover personal property levied on under an execution against the property of another, where the value of the property does not exceed one thousand dollars.

2. REPLEVIN—*Not Action for Misconduct.* An action of repevin to recover chattels levied upon by a sheriff as the property of another, is not an action against an officer for misconduct in office.

3. CONVEYANCE—*Presumed to be Fraudulent, When* Under Section 2663, Oklahoma Statutes 1893, every transfer of personal property other than a thing in action, if made by a person having at the time the possession or control of the property, and not accompanied by immediate delivery and followed by an actual and continued change of possession, is conclusively presumed to be fraudulent and therefor void, as against those who are creditors of the person making such transfer while he remains in possession, and the successor in interest of such creditors.

4. CHANGE OF POSSESSION—*Valid Transfer.* Where the facts are undisputed, it is for the court to determine as a question of law whether such facts show such an actual and continued change of possession as will render a transfer of personal property valid as against creditors of the seller.

5. PERSONAL PROPERTY, SALE OF—*Void Against Whom.* A sale of personal property may be valid and enforceable as between the vendor and vendee, and yet void as against creditors of the vendor, where such sale is unaccompanied by immediate delivery, and not followed by actual and cont ined change of possession.

(Syllabus by the Court.)

*Appeal from the District Court of Kingfisher County; before Jno. C. Tarsney, District Judge.*

*J. C. Robberts* and *George B. Robberts,* for plaintiff in error.

*Ellis Reed, Cook & Ellis,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error, Charles L. Walters, commenced his action in the probate court of Kingfisher county, against John A. Ratliff as sheriff, to recover four stacks of wheat in the field, and two hundred and seventy-five bushels of wheat in the elevator. The plaintiff alleged that he was the owner and entitled to the possession of said wheat, and that it was of the value of five hundred and fifty dollars, and that the defendant wrongfully detained said wheat from him. He prayed judgment for the return of said wheat or its value, and one hundred dollars damages. An affidavit in replevin was filed, but the property was never seized under the writ in replevin, and the action proceeded as one for the value of the property only. The answer was a general denial. Trial was had in the probate court, and judgment rendered in favor of plaintiff for the sum of three hundred and seventy-one dollars. Ratliff appealed to the district court, where the case was again tried to a jury, and judgment rendered for defendant, on a demurrer to plaintiff's evidence. The defendant in error has moved in this court to dismiss the cause, for the reason that the probate court was without jurisdiction of the subject matter of the action; that the district court acquired no jurisdiction, and that this court is without jurisdiction.

Before deciding this cause on its merits, it is incumbent on this court to determine this question of jurisdiction. The defendant Ratliff is named in the title of the action as "John Ratliff, as Sheriff of Kingfisher county, O. T." It is alleged in the petition that "the defendant is the duly elected, qualified and acting sheriff of Kingfisher county, Oklahoma Territory;" "that said defendant wrongfully

and unjustly, as said sheriff, detains the same and the possession thereof from the plaintiff." "Wherefore the plaintiff prays judgment against said defendant as sheriff," etc., etc.

The defendant, before trial in the probate court, moved to dismiss the cause, for the reason that it was an "action against an officer for misconduct in office," and that the probate court had no jurisdiction of said cause. The motion was overruled, and after judgment the defendant appealed to the district court. In the district court the defendant renewed his motion to dismiss for want of jurisdiction in the probate court, and said motion was again overruled. He now again renews the motion here for same reasons.

The statute conferring jurisdiction on probate courts in civil causes, sec. 1562, provides:

"Probate courts in their respective counties shall in addition to the powers conferred upon them by the probate chapter of the Territory, have and exercise the ordinary powers and jurisdiction of justices of the peace, and shall in civil causes have concurrent jurisdiction with the district court in all civil cases in any sum not exceeding one thousand dollars, exclusive of costs, and in actions of replevin where the appraised value of the property does not exceed that sum; and the provisions of the chapter on civil procedure relative to justices of the peace and to practice and proceedings in the district court shall apply to the proceedings in all civil actions, prosecuted before said probate courts: Provided, That probate courts shall not have jurisdiction: First, in any action for malicious prosecution. Second, in any action against officers for misconduct in office except where like proceedings can be had before justices of the peace."

The causes for misconduct of officers in which justices of the peace may entertain jurisdiction are governed by

subdivision seventh, sec. 4640, Stat. 1893, which reads as follows:

"To proceed against constables failing to make return, making false return, or failing to pay over money collected on execution issued by such justice."

This last provision is a part of the civil code, adopted from Kansas, while the former is a part of the act extending the jurisdiction of probate courts which was ratified by an act of congress.

It is contended by counsel for defendant in error that the probate court can in no case exercise any greater jurisdiction than that of a justice of the peace in actions against officers for misconduct in office, and that such courts in this class of cases are limited to proceedings against constables for misconduct.

It is further contended that the case under consideration is one to recover damages against the sheriff for misconduct in office. We are not disposed to question the first contention, but is the second well founded? It does not necessarily follow that because the wrongful act of the sheriff is an incident to the cause of action pleaded, that it is an action against the officer for misconduct in office. Nor does it follow that the probate court loses jurisdiction of a cause of action, clearly within its jurisdiction because it happens to involve the wrongful conduct of an officer. The probate court has no jurisdiction of the crime of horse stealing; yet it would have jurisdiction in an action to replevin the stolen horse, and it would not lose jurisdiction by proof of the fact that the subject of the replevin action had been feloniously stolen by the defendant. The probate court also has jurisdiction of common assault, but such jurisdiction will not be defeated because the assault was the wrongful act of an officer

attempting to discharge an official duty. The question of jurisdiction must be determined from the gist and purpose of the action.

The petition in the case at bar sets up a cause in replevin; it is an action to recover specific personal property or its value, and for damages for detention. It cannot be demoninated an action against an officer for misconduct in office. It may be true and probably is, that if the defendant as sheriff took the property in question upon a writ against some other person, and held the plaintiff's property on such writ, and by virtue of such writ, then he might be proceeded against for damages, and as such officer his bondsmen might be liable for his misconduct, but in this case the bondsmen are not sued, and there is no attempt to charge him as an officer for official misconduct, and even though the facts proven might make a case of official misconduct, it would not change the character of the case made by the petition.

The Kansas cases cited by defendant in error are not inconsistent with this theory. The case of *Neal v. Keller*, 12 Kan. 247, was an action brought before a justice of the peace against another justice of the peace to recover money which he had collected in his official capacity, and had failed to pay over on demand. The court held that this was an official act, and his official duty required him to pay over the money, and his failure on demand constituted misconduct in office. It was held that the justice court had no jurisdiction because the action was one of official misconduct.

The case of *Brocket et al. v. Martin et al.* 11 Kan. 378, was an action against a justice of the peace and his sureties on an official bond, to recover for money collected

by the justice upon a judgment recorded on his docket. The only question decided was whether the justice held the money by virtue of his office, or as agent for the judgment creditor; there is nothing in the case applicable to the question at bar.

The case of *Dodge v. Kincaid Brothers*, 3 Kansas, 346, was an action on a constables' bond to recover money collected by him on an execution issued by the justice, and not paid over by such constable. It was properly held that by the terms of the statute the justice of the peace had jurisdiction of such action. It had been contended that the justice should proceed summarily instead of by civil action on the bond.

We do not question the correctness of any of these decisions, nor do they conflict with our views in this case.

The case cited from Ohio supreme court, *State v. Jennings et al.*, 40 Ohio St. 419, holds that a seizure of the goods of A under color of process against B, is official misconduct in the officer making the seizure, and is a breach of the conditions of his official bond, for which his sureties will be liable; but it is not held that no other remedy would be available.

We regard the Nebraska cases as sound in principle, and supported by logic and reason. That state has a statute identical with ours on the question of jurisdiction of justices of the peace.

In the case of *Miller v. Roby*, 4 N. W. 65, the plaintiff brought an action for conversion, and recovered damages. On appeal Mr. Justice Maxwell for the court said:

"It appears from the record that Miller was sheriff of York county and took the goods in question under an order of attachment in an action wherein J. E. Porter &

Son were plaintiffs and Samuel Robey defendant, and judgment was rendered against Robey for the sum of $38.60, and that the property so levied upon was applied in making payment of said judgment. There is no allegation in the petition that the officer acted in bad faith in making the levy or that he had reason to believe that the goods belonged to Mary E. Robey, the allegation of the petition being 'And said plaintiff avers that then and there the said property being found and converted and disposed of, the same to their, the defendants' own use and benefit, to the damage of said plaintiff in the sum of three hundred dollars.' The action is therefore not for misconduct in office, but for the value of the property taken. Misconduct in office may be defined as unlawful behavior or neglect by a public officer by which the rights of the parties have been affected. Thus, a sheriff or constable is liable to a plaintiff for refusal or neglect to serve process or want of diligence in service, for the escape of a defendant who was lawfully arrested on civil process, either *mesne* or final; for neglect or refusal to return process; for making a false return; for negligently caring for goods whereby some of them are lost; for neglect to pay over moneys collected and the like. * * * But this action not being for misconduct in office should have been brought before a justice of the peace."

In the case of *Neihardt v. Kilmer*, 10 N. W. 531, where suit was commenced before a justice of the peace for taking and converting personal chattels, the defendant took the property as sheriff on process against another party. It was claimed that the action was against an officer, and for misconduct in office, and that the court was without jurisdiction. The court said:

"There can be no doubt that under the authorities, the plaintiff could have brought this action against the sheriff and his sureties, and by proper averments and proofs, made this an action for misconduct in office, and the official sureties of the sheriff would be held for the

damages caused by such misconduct. In such case a justice of the peace would not have jurisdiction, the same being prohibited by sec. 907 of the code. But is the plaintiff restricted to this remedy, and consequently to a court of record in which to prosecute? None of the cases cited go that far. The fact of the defendants' being sheriff and deputy sheriff respectively does not exempt them from the action of trespass, or of trover and conversion. The petition as the writer understands it, presents a cause of action of the latter designation, as actions at law were formerly known, a cause of action of which a justice of the peace has unquestioned jurisdiction."

The case of *Spielman v. Flynn*, 27 N. W. 224, approves the two former cases and states the law thus:

"When the amount claimed does not exceed $200, and an action is brought against the sheriff for the value of property sold by him under an execution in his hands, and there is no charge of misconduct, a justice of the peace has jurisdiction."

In our opinion the Nebraska cases quoted from properly state the law. It was not the purpose of the legislature to deprive the justices' courts of jurisdiction in the actions of replevin, trespass, trover and conversion, because the defendant mght happen to be a sheriff, or because of the fact that such sheriff had taken the wrong property under a writ of attachment, replevin or execution. It is only in those cases where the action is against the officer as such, or on his official bond, and the gist of the action is the enforcement of a remedy for some violation or omission of official duty, and official misconduct is alleged and relied upon as the foundation for a recovery, that the statutory prohibition is intended to apply.

The action in the case at bar is the ordinary action in replevin, or for conversion to recover the value of the chattels taken. There is no allegation that the defendant

as sheriff acted maliciously, wilfully, or in bad faith, and it does not appear that it was the purpose of the pleader to charge or rely upon any official misconduct. We think the probate court had jurisdiction, and the case is properly here for review.

We now proceed to review the case upon the merits. The cause was tried to a jury. The proof submitted by the plaintiff is to the effect that the defendant, Charles Walters, and John Walters were brothers; that John lived on a homestead in Kingfisher county, and was engaged in farming. Charles was a single man, and worked as a farm laborer, sometimes in Oklahoma and sometimes in Kansas. In the summer of 1895 the brothers made an agreement, whereby Charles was to go to Kansas, and work and earn money to procure seed wheat and send to John, and John would sow some wheat for Charles, and give him the crop in payment for the seed wheat. Pursuant to this agreement, Charles went to Kansas, and he procured and sent to John thirty bushels of wheat, which was planted, and a crop raised. The next fall, 1896, John sowed twenty-five acres of wheat in a particular field on his place, which he intended for Charles, in payment for the thirty bushels of seed wheat. Charles returned to John's in the winter of 1896, or spring of 1897, and was informed by John that the twenty-five acres of wheat was his. Charles lived in John's family, and worked for him as a farm laborer for wages. The wheat matured, and was harvested and stacked on John's place. Charles hired John and a neighbor who owned a reaping machine to cut the wheat, and they hired Charles as a laborer to assist. The wheat was sown by John, on John's land, was harvested and stacked

under his direction and remained on his farm and under his control until after the alleged taking by the defendant. Prior to the bringing of this action, the Buford and George Implement Co. obtained a judgment in the district court of Kingfisher county against John Walters for the sum of $1,304.77. On July 13, 1897, execution was issued on said judgment, and delivered to the defendant Ratliff, sheriff of Kingfisher county and on July 17, 1897, the exe· cution was levied on the stacks of wheat in question, as the property of John Walters. The plaintiff made demand for the wheat, and it was refused. During the period between the levy and the trial, a portion of the wheat was threshed and stored in an elevator. It seems that the plaintiff and John Walters attempted to take possession of and thresh the wheat after the levy of the execution, but the sheriff interfered and stopped the further disposal of the wheat. Two ricks of the wheat were afterwards turned over to John Walters by the sheriff as exempt property. The sheriff then had all the wheat threshed, and sold it on the execution, and applied the proceeds in favor of Buford and George Implement Co. After the plaintiff had submitted this proof and rested, the defendant demurred to the evidence. The court sustained the demurrer, and rendered judgment for defendant for his costs. The ruling of the trial court on the demurrer to the evidence is assigned as error.

We think there was no error in this ruling. Section 2663, Statutes of Oklahoma 1893, provides:

"Every transfer of personal proprerty other than a thing in action * * * is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued

change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession and the successors in interest of such creditors."

This section was adopted from the statutes of Dakota, compiled laws Dakota, 1887, sec. 4657, and had been construed prior to its adoption by our legislature. In *Grady v. Baker*, 19 N. W. 417, the supreme court of the territory of Dakota, having this statute under consideration said:

"It means that the sale shall be open and public; that the world may be appraised of the change of ownership. The change of possession must be actual and continued and not subject to some secret trust between the seller and buyer. If such is the character of the possession the statute is satisfied, and the sale will not be avoided."

California has the same statute, and it has been frequently construed by the courts of that state, and we think correctly. In *Stevens v. Irwin, Sheriff*, 15 Cal. 506, the supreme court of that state said:

"The rule as defined by our statute is almost in the language of that given in the cases which establish the rule in England. It is true that some stress is laid on the words actual and continued possession, but these words are suggested by the facts and principles of the decided cases referred to. The word 'actual' was designed to exclude the idea of a mere formal change of possession, and the word 'continued' to exclude the idea of a mere temporary change. But it never was the design of the statute to give such extension of meaning to this phrase, 'continued change of possession' as to require upon penalty of a forfeiture of the goods, that the vendor should never have any control over or use of them. This construction if adopted would lead to very unjust and absurd results. A vendor could never become trustee of the goods without their being forfeited or liable for his debts. If a livery stable keeper hired a horse to the original ven-

dor, it would be liable for his debts; or if a boarder came into a room, the furniture might be liable for his debts if he once owned it. The 'continued change of possession,' then, does not mean a continuance for all times of this possession, or a perpetual exclusion of all use or control of the property by the original vendor. A reasonable construction must be given to this language in analogy to the doctrines of the courts holding the general principles transcribed into the statute. The delivery must be made of the property; the vendee must take actual possession; that possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. It must be such as to give evidence to the world of the claims of the new owner. He must, in other words, be in the usual relation to the property which owners of goods occupy to their property."

In discussing the manner of making actual delivery the California supreme court in *Lay v. Neville,* 25 Cal. 546, said:

"It was not intended by the fifteenth section of the statute of frauds to make a sale void, as against creditors and purchasers of the vendor unless the vendee shall perform in every case what might in some cases be an impossibility. It was intended that the vendee should immediately take and continuously hold the possession of the goods purchased, in the manner and accompanied with such plain and unmistakable acts of possession, control and ownership as a prudent *bona fide* purchaser would do, in the exercise of his rights over the property, so that all persons might have notice that he owned and had possession of the property."

"The acts that will constitute a delivery will vary in the different classes of cases, and will depend very much upon the character and quantity of the property sold, as well as the circumstances of each particular case. The same acts are not necessary to make a good delivery of a ponderous article, like a block of granite or a stack of hay,

—18

as would be required in case of an article of small bulk as a parcel of bullion.   It might properly be required that there should me a manual delivery of a single sack of grain at the moment of its sale, but upon the sale of two thousand sacks, this could not be done without incurring great and unnecessary expense, and departing from the usual course of business. The same is true of the acts that may be required to manifest 'actual and continued change of possession' required by the statute.   Each case must in a great manner.depend upon its own circumstances."

The same construction is given this statute by the supreme court of South Dakota, in *Longley v. Daly*, 46 N. W. 247.

In *Woods v. Bugbey*, 29 Col. 466,the court says:

"Our satute admits of no explanation excusing the delivery and change of possession.   Therein is the difference which it is manifest the legislature intended, in order to exclude all inquiry as to the consideration paid by the purchaser or as to his motives and intentions in the premises.   If in fact there was not an actual and continued change of possession given, the statute pronounces the transfer fraudulent as to creditors, and courts have no right to seek to evade its force and effect.   No excerse or explanation for want of an actual and continued change of possession can be entertained, and it is quite useless to cite decisions made under the Statutes of Elizabeth and of New York, or other states allowing the want of an immediate delivery and an actual and continued change of possession to be explained or accounted for as authoritative expositions of the rule which our statute has prescribed."

These authorities we think are consistent with the spirit and purpose of the statute, and may very safely be followed.

In the case before us we need not inquire whether there was a valid sale and transfer of the wheat as between

John Walters and Charles Walters. The question to be determined is, was there a sale of the wheat by John Walters to Charles Walters accompanied by immediate delivery and followed by actual and continued change of possession? If there was not, then the sale was conclusive evidence of fraud as against the creditors of John Walters, although the agreement and sale was such as that it might have been enforced between the seller and buyer, and even though the buyer had no knowledge of any fraud upon the part of the seller. (*Stevens v. Halstead,* 58 Cal. 193; *Merill v. Hurlburt,* 63 Cal. 494; *Edwards v. Sanoma Bank,* 59 Cal. 148; *Murphy v. Malgrew,* 102 Cal. 547.)

The demurrer to the evidence presented the question to the court, as one of law, whether the evidence submitted by the plaintiff, considered in its most favorable light for the plaintiff, showed an immediate delivery followed by an actual and continued change of possession of the wheat? There was nothing in the evidence from which it could be fairly and reasonably inferred that any open positive change of possession ever took place. There was nothing done by which the general public could discern any outward signs of a change in possession. There was no evidence of such a delivery as the circumstances of the case would reasonably admit of; hence, the court was bound to hold as a matter of law, that the attempted sale or transfer of the wheat was fraudulent and void, as to creditors of John Walters. There was no apparent change in the conditions at any time. John planted the wheat on his own ground; he planted his own seed with his own teams; he prepared the ground for the wheat; and it grew on his ground; during a portion of this time the plaintiff worked for him as a farm laborer and assisted him in

farming. When the wheat was ready to harvest, it was cut by John Walters and a neighbor, and was stacked on John's farm. It was treated the same as his own grain; there was nothing to indicate to the outside world that the plaintiff had any interest in the wheat, and he did no acts which to the public would indicate acts of ownership, or a purpose to control the wheat while growing or afterwards, until the sheriff levied the execution. It was then too late to take such possession as would defeat the levy of the execution.

We think the court properly sustained the demurrer to the evidence and gave judgment for the defendant.

The only other ruling complained of is the refusal of the trial court to permit the plaintiff to reopen his case and introduce additional testimony after he had rested, and the demurrer had been presented. Upon this question we cannot interfere. It was a matter wholly within the discretion of the trial court, and unless it affirmatively appears that there was an abuse of discretion, the appellate court will not disturb the action of the trial court.

It does not appear that there was such abuse of discretion as would be reversible error.

The judgment of the district court is affirmed, at costs of plaintiff in error.

All of the Justices concurring.