RECEIVERS OF VIRGINIA IRON, COAL & COKE CO. et al. v. STAAKE et al.    FIRST NAT. BANK OF BALTIMORE v. SAME. STAAKE et al. v. WATTS et al. (two cases).

(Circuit Court of Appeals, Fourth Circuit.    November 15, 1904.)

Nos. 531, 532, 533, 538.

1. BANKRUPTCY—TITLE OF TRUSTEE—LIENS INVALID AS TO CREDITORS.
    The rule that the trustee takes the estate of the bankrupt in the same plight as the bankrupt held it is not applicable to liens which, although valid as to the bankrupt, are invalid as to creditors.

2. SAME—ATTACHMENTS—PRESERVATION OF LIENS.
    Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450], provides that attachments and other liens obtained against an insolvent within four months prior to the filing of a petition in bankruptcy against him shall be void in case he is adjudged a bankrupt, and the property affected by such attachments or liens shall be released from the same, and pass to the trustee as part of the estate of the bankrupt, unless the court shall order the lien to be preserved for the benefit of the estate. Creditors of an insolvent attached, under the Virginia law giving them that right, property which the insolvent had conveyed, but deeds to which had not been recorded. After the attachment the

deeds were recorded, and within four months from the attachment the insolvent was adjudged a bankrupt. *Held*, that the attachment liens could be preserved for the benefit of the bankrupt's estate, although the property subject thereto did not belong to the bankrupt, except as to the attaching creditors, and could not have been reached by the trustee, except for the attachments.

3. SAME—COUNSEL FEES.

It was proper for the bankruptcy court to allow attachment creditors who had obtained liens on property which the trustee could not have otherwise reached a reasonable compensation for attorney's fees, on ordering the attachment liens preserved for the benefit of the estate.

Purnell, District Judge, dissents from paragraph 2.

Petitions to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the Western District of Virginia, at Lynchburg, in Bankruptcy.

Cross-Appeals from the District Court of the United States for the Western District of Virginia, at Lynchburg.

For opinion below, see 126 Fed. 845.

The facts in these proceedings have been agreed upon, and are as follows: Chester R. Baird, trading as C. R. Baird & Co., on December 7, 1899, owned certain real estate in Virginia, known as the West End Furnace Property, and, as of said date, he sold it to the Roanoke Furnace Company, subject to certain existing incumbrances, and executed a contract in writing, and received from the Roanoke Furnace Company all the consideration to which he was entitled under the contract, to wit, shares amounting to $500,000 of the capital stock of the said Roanoke Furnace Company. Under the contract of sale, the Roanoke Furnace Company took immediate possession in December, 1899, of the property so purchased; but no deed to the company was executed by Baird until November 5, 1900, when a proper deed was executed, and promptly recorded. In the meantime, during the month of October, 1900, nine different attachments, amounting to over $40,000, against Baird, as a nonresident of Virginia, were issued at the instance of certain of his creditors, and were levied upon the furnace property. Under the provisions of the laws of Virginia, no deed from Baird to the furnace company having been executed and recorded until after the attachments were levied, it is conceded that the attaching creditors acquired, as against Baird and the furnace company, a lien upon the property so levied upon. Code Va. 1887, §§ 2463, 2464, 2465, 2472. Within four months from the levying of the attachments, to wit, on December 24, 1900, an involuntary petition in bankruptcy was filed against Baird in the United States District Court for the Eastern District of Pennsylvania, and he was adjudged a bankrupt, and on January 2, 1901, the District Court of the United States for the Western District of Virginia assumed ancillary jurisdiction of so much of the bankruptcy proceedings as related to the property located in Virginia. On December 29, 1900, also within four months from the levying of the attachments, an involuntary petition in bankruptcy was filed against the Roanoke Furnace Company, and such proceedings were had that it was adjudicated a bankrupt. On March 26, 1901, William H. Staake was appointed trustee of the bankrupt estate of C. R. Baird, and on June 29, 1901, John N. M. Shimer was appointed trustee of the bankrupt estate of the Roanoke Furnace Company. Under orders of court, the property conveyed by Baird to the furnace company was sold, and the rights and claims of all the parties were transferred to the fund derived therefrom, and all these claims were submitted to the determination of the court below by express consent of all the parties. Upon the issues made by the petitions and answers, the court below ruled that the attachments against Baird, having been obtained through legal proceedings against him when he was insolvent, and within four months prior to the filing of the petition in bankruptcy against him, were null and void, under section 67f of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450], so far as they would give a preference to the attaching creditors, but that the liens should be preserved for the ben-

efit of the bankrupt's estate, and that they should pass to and be preserved by the trustee for the benefit of the estate, and directed that the trustee of the bankrupt estate be subrogated to the rights of the attaching creditors, and authorized and empowered to enforce said attachment liens with like force and effect as the said attaching creditors might have done, had not the bankruptcy proceedings interfered. The District Court also ruled that the trustee took these liens subject to the claim for compensation of the attorneys who procured the attachments, and directed that, out of the fund derived from the attachments, the reasonable fees of the attorneys representing the attaching creditors should be paid. The grounds upon which the learned District Judge based his rulings are ably stated in his opinion filed in the case. These two rulings are the subject of the present cross-petitions for revision.

Wm. Gordon Robertson, S. Hamilton Graves, and A. P. Staples, for petitioners.

Arthur G. Dickson, John Dickey, S. & M. Griffin, and Samuel W. Cooper, for respondents in Nos. 531 and 532.

Samuel W. Cooper and Arthur G. Dickson, for Staake, trustee.

Wm. Gordon Robertson and A. P. Staples, for respondents and appellees in Nos. 533 and 538.

Before GOFF, Circuit Judge, and MORRIS and PURNELL, District Judges.

MORRIS, District Judge (after stating the facts). Section 67f (Bankr. Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]) provides:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: provided, that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

It cannot be disputed that the liens of the attachments in this case were obtained within four months by legal proceedings against a person who was insolvent, and that the court has, on due notice, ordered that the right under the attachments shall be preserved for the benefit of the estate, and pass to and be preserved by the trustee for the benefit of the estate. There is therefore in the facts of this case a literal gratification of the words of this section. It is contended, however, that as the first clause of the section makes null and void the liens therein mentioned, and declares that the property affected by the lien shall be wholly discharged and released therefrom, and pass to the trustee as part of the estate of the bankrupt, therefore the exception in the latter part of the clause of 67f can have reference only to liens on property, which, if the liens were annulled, would pass to the trustee of the bankrupt re-

leased from the lien. We think this is narrowing the more obvious meaning of the words. The wording seems clearly to contemplate that a creditor might obtain, by reason of his being a creditor of the bankrupt, a prohibited lien against property, which would not, if unaffected, pass to the trustee in bankruptcy, and it would appear that it was for that reason the clause in question was inserted, preserving the lien, if the court should so order, for the benefit of the estate, and vesting it in the trustee.

A primary object of the bankrupt law is to prevent preferences and compel equality among creditors of the bankrupt, and there can be no doubt that the sequestering of attachment liens, such as those in question in this case, for the benefit of the general creditors, does produce equality and prevent preferences. The rule that the trustee takes the estate of the bankrupt in the same plight as the bankrupt held it is not applicable to liens which, although valid as to the bankrupt, are invalid as to creditors. This distinction is clearly stated in the following citation from In re New York Economical Printing Company, 110 Fed. 514, 49 C. C. A. 133, quoted by the Supreme Court of the United States in Hewit v. Berlin Machine Works, 194 U. S. 302, 24 Sup. Ct. 690, 48 L. Ed. 986:

> "The bankrupt act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues. The present act, like all preceding acts, contemplates that a lien good at that time as against the debtor and as against all his creditors shall remain undistributed. If it is one which has been obtained in contravention of some provision of the act which is fraudulent as to creditors, or invalid as to creditors for want of record, it is invalid as to the trustee."

In the present case the sale by the bankrupt was void as against attaching creditors for want of a recorded deed. The property was levied upon by creditors, and, by virtue of the attachments, might have been sold under judicial process against the bankrupt. The levy was within four months of the filing of the petition in bankruptcy, and under section 67f the lien is preserved for the benefit of his estate. In the case of In re New York Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133, above cited, Judge Wallace, speaking of the right of a trustee in bankruptcy to treat as invalid a chattel mortgage which was not filed in compliance with the laws of New York, and which, under the decisions in that state, could be treated as invalid only by creditors who had obtained judgments and acquired a lien, proceeded further to say:

> "Subdivision 'b,' § 67, Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), preserves for the benefit of the estate in bankruptcy a right which some particular creditor has been prevented from enforcing by the intervention of the debtor's bankruptcy. If a creditor, by an execution or a creditors' bill, has secured a legal or equitable lien upon mortgaged property before the mortgagor has been adjudicated a bankrupt, under this provision his rights will or will not inure to the benefit of the estate, depending upon the time when the lien was acquired. If acquired more than four months before the commencement of the bankruptcy proceedings, his lien would inure to his own exclusive benefit; but, if acquired at any time within the four months it would be null and void, under subdivision 'f' of the section, except as preserved for the benefit of the estate, as provided in that subdivision and in subdivision 'b.'"

It is urged that, by giving to the trustee of the bankrupt's estate the benefit of the attachments, the court is taking from the attaching creditors property which did not belong to the bankrupt, and could not have passed to his trustee, but which was a right which the law of Virginia, because of a policy of its own, gave to the creditors in a property which did not in fact belong to the bankrupt. We think that the Virginia law may well be considered as giving the right to the attaching creditor, because, quoad the attaching creditor, the law regards the property so attached as to that extent still remaining the property of the bankrupt, because of the want of a proper recorded evidence of transfer, and that it is because the law considers the furnace property to that extent as remaining the property of Baird that the attachments are liens at all.

We consider the language of section 67f so mandatory and imperative that we arrive at the conclusion that the ruling of the court below must be sustained.

The other question is as to the allowance of a reasonable compensation to the attorneys who represented the attaching creditors, and whose proceedings produced the fund which now is to pass to the trustee of the bankrupt. The attaching creditors, in good faith, and in a justifiable exercise of the right given to them by the Virginia law, employed counsel to institute proceedings to seize the property which the bankrupt, as it now appears, had sold. By virtue of that seizure, and solely by virtue of it, and to the extent of the seizure, the proceeds of those proceedings now pass to the trustee. The equity of the claim for compensation to be paid out of the fund is very strong. It is clearly a case in which, by an appropriation which the bankrupt law makes of a fund which came into existence and was preserved by the legal proceedings instituted by the attaching creditors, all the common creditors, without distinction, are benefited. The fund which otherwise the attaching creditors would have secured for their own benefit the bankrupt law says shall be shared equally among all the creditors. The fund was brought into existence by the exertions of the attaching creditors, and should be considered as in the same class as a fund arising under a creditors' bill, because the bankrupt act declares it shall be so treated. The fund comes into the hands of the trustee of the bankrupt burdened with the charges which were necessarily incurred to bring it into existence. It would appear eminently proper in such a case that the bankruptcy court should, in its discretion, allow such reasonable counsel fees and expenses as were necessarily incurred in the prosecution of the suits. Trustees v. Greenough, 105 U. S. 527-534, 26 L. Ed. 1157.

The court below carefully considered the amounts proper to be allowed, and, with all the facts before it, fixed the allowances. We do not find that injustice has been done either to the counsel of the attaching creditors or to the estate of the bankrupt by the amounts allowed by the District Court, and we approve the allowances as fair and just.

The orders of the court below are affirmed.

133 F.—46

PURNELL, District Judge (dissenting). I cannot concur in the foregoing opinion. Upon the facts agreed and the law stated, it is evident to my mind that Congress did not mean by section 67f of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450], to provide for the maintenance or preservation of liens such as those set out in this case. If the attachments were void, no lien was acquired thereunder, and, if void for one purpose, they were void for all purposes. They were not in favor of the bankrupt, but for debts due by him, and I cannot agree that even under the act of Congress a court of bankruptcy can convert a debt or liability into an asset. The trustee, under the bankrupt law, takes only such property as the bankrupt is entitled to. He was not only entitled to nothing under these attachments, but he was the debtor whose property was attached.

And as to the other question, to wit, the allowance of reasonable compensation to attorneys who represented attaching creditors, and whose proceedings produced the fund, if the fund is to be retained in the bankrupt court, I concur in the opinion that there should be allowance of reasonable compensation; but as to the other question I most respectfully dissent.