Love, *Sheriff, et al.* v. Hill.

No. 2055, Okla. T.   Opinion Filed June 22, 1908.

(96 Pac. 623.)

1.   FRAUDULENT CONVEYANCES—Change of Possession.   One H. sold to plaintiff a number of hogs which were at H.'s home several miles from where the sale was made.  H. executed a bill of sale to plaintiff for the hogs, and the same was recorded.  The bill of sale provided that the hogs should be held by H. until plaintiff ordered them delivered to a certain town, within not to exceed 15 days.  Within the 15 days and before the hogs were delivered at said town, and before they had ever been seen by plaintiff, they were levied upon by attaching creditors of H. **Held**, that the sale was void under section 2775 Wilson's Rev. & Ann. St. Okla. 1903, as against the attaching creditors, on the ground there was not an immediate delivery and actual and continued change of possession.

2.   BANKRUPTCY—Rights of Trustee—Preservation of Attachment Lien.  Bankr. Act, July 1, 1898, sec. 67f. c. 541, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), provides that attachments and other liens, obtained against an insolvent within four months prior to the filing of petition in bankruptcy, shall be void in case he is adjudged a bankrupt, and the property affected by such attachment or lien shall be released, and shall pass to the trustee as part of the estate of the bankrupt, unless the court shall order the lien to be preserved for the benefit of the estate.  Creditors of an insolvent, within four months prior to his filing a voluntary

petition in bankruptcy, attached certain property that had been by him sold, but the sale under the law where the same was made was void as to attaching creditors. **Held,** that the attachment lien could be preserved for the benefit of the bankrupt's estate, and that the trustee, upon order of the court in the bankruptcy proceedings for the preservation of such lien, became subrogated to all the rights of the attaching creditors thereunder.

(Syllabus by the Court.)

*Error from Probate Court, Kingfisher County; Jno. M. Graham, Judge.*

Action in replevin by John C. Hill against J. P. Love, sheriff of Kingfisher county, and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

This is an action in replevin filed in the probate court of Kingfisher county on September 29, 1905, by John C. Hill, plaintiff, against J. P Love, as sheriff of Kingfisher county, for the possession of 21 head of hogs, valued at the sum of $148. J. P. Love, defendant in the court below, filed his answer, denying all the allegations of plaintiff's petition; and on January 10, 1906, J. A. Banker, as trustee in bankruptcy of J. N. Higby, bankrupt, filed his plea of intervention, alleging that he, as trustee of the estate of the said bankrupt, was entitled to the possession of said hogs or their value, for the benefit of the creditors of said bankrupt estate. The case was tried without a jury, on January 10, 1906, and the court made findings of fact and conclusions of law, and thereupon rendered judgment in favor of the plaintiff, J. C. Hill, for the possession of said hogs, and found their value at the sum of $148.

The facts are that on the 22d day of September, 1905, J. N. Higby was due and owing to J. C. Hill on his promissory note the sum of $60, and, in addition thereto, on open account, a sufficient sum to amount in the total to the sum of $74 or $75. On said date J. N. Higby, for the purpose of paying said note and his open account to plaintiff, and for the further consideration of $5 or $6

in cash, executed and delivered to plaintiff a bill of sale for the hogs in controversy. One of the provisions of the bill of sale was that the hogs should be held by Higby until plaintiff ordered their delivery in Kingfisher, within a time not to exceed 15 days. Plaintiff filed the bill of sale to him from Higby with the register of deeds for Kingfisher county on the 23d day of September, 1905, and the same was duly recorded. At the time of the execution of the bill of sale, Higby was insolvent, but this fact was not known to plaintiff. At that time, and for a long time prior thereto, H. H. Banker and J. A. Banker, doing business as a partnership under the firm name of Banker Bros., were *bona fide* creditors of Higby. At the time the bill of sale was executed by Higby to plaintiff, they were both in the city of Kingfisher, several miles from the farm of Higby, where the hogs conveyed by the bill of sale were located at that time, and had been several months prior thereto. On September 28, 1905, Banker Bros. filed, in the office of the clerk of the district court of Kingfisher county, an action against J. N. Higby for the sum of $114, and sued out a writ of attachment, which they had placed in the hands of the sheriff, who proceeded to the farm of J. N. Higby, where he found the hogs in controversy loaded in and upon the wagons of J. N. Higby for the purpose of bringing them to town and delivering the same to plaintiff. The teams of Higby were hitched to the wagons, and he was about to start to town with the property. The sheriff thereupon levied the writ of attachment in the case of Banker Bros v. Higby upon the hogs and other property, and transferred the hogs from the wagons of Higby to the wagons provided by the sheriff. J. C. Hill then filed this action in replevin for the possession of said hogs, and the writ of replevin was served upon the sheriff by the coroner of the county, who took possession of the hogs under such writ, on the 29th day of September, at which time plaintiff saw the hogs for the first time. At the time of the filing of this action, plaintiff executed bond, and defendant, failing to execute a redelivery bond, possession of the hogs was delivered to plaintiff.

On October 11, 1905, Higby filed in the office of the clerk of the district court his voluntary petition in bankruptcy, and was duly adjudged a bankrupt. Soon thereafter J. A. Banker was appointed and qualified as trustee of the bankrupt's estate. During the following month of November, an order was made by the referee in bankruptcy that the attachment proceedings of Banker Bros. be not dissolved by the adjudication in bankruptcy, but that the lien therein be continued and perfected, for and on behalf of the creditors of the bankrupt, and on December 2, 1905, the district court of Kingfisher county rendered judgment in the attachment proceeding of Banker Bros. against Higby, in favor of plaintiff for the sum of $114, and ordered that the attachment therein issued be sustained as against the defendants in favor of the plaintiff; provided, however, that the sustaining of said attachment should be done for the benefit of all the creditors of the defendant Higby, whose claims should be filed against his estate in bankruptcy, and that the trustee in bankruptcy should be subrogated to all the rights acquired by plaintiff in the attachment proceedings for the benefit of said creditors.

The court made findings of fact in substance as above stated, and thereupon made the following conclusions of law:

"(1) That J. A. Banker, as trustee, has a right under the facts to appear in this action for the determination of his rights as a representative of the creditors in bankruptcy of J. N. Higby, and that he may defeat the action of the plaintiff in replevin as such if the facts warrant it.

"(2) The court concludes that the rights of the plaintiff are to be determined as they existed on the date of the action of replevin, unless the rights as they then existed were subsequently changed by the proceedings in bankruptcy, and the court concluded that the only change effected by such proceedings was to give the rights that had accrued to Banker Bros. under the attachment, if any, to the estate as a whole, as represented by J. A. Banker, trustee.

"(3) The court concludes that the sale from Higby to the plaintiff on September 23d, the date of the bill of sale, was complete, and that a delivery was effected thereby, in that the pos-

session of J. N. Higby, from that time up to the time of the levy, was that of the agent of J. C. Hill, the vendee, and that it was proper for the vendee to leave them in the hands of the vendor, as he did, as his agent, and as the agent, his possession was the possession of the vendee. The court concludes that the sale was a valid one as to the creditors of J. N. Higby, including the attachment plaintiffs, Banker Bros., and that the subsequent bankruptcy proceedings did not affect it, nor add any new rights to those of the general creditors."

*F. L. Boynton,* for plaintiffs in error.

*R. A. Lyle,* for defendant in error.

HAYES, J. (after stating the facts as above). Under the findings of fact and conclusions of law made by the court, and under plaintiffs in error's petition, only one proposition is presented to this court for its consideration, which is: Did the court err in holding that the facts found constituted a delivery by Higby to Hill, and that the sale was valid as to Banker Bros., the attaching creditors of Higby? A second proposition is presented by the contention of defendant in error in his brief. Defendant in error insists that, if the court erred in holding that the sale from Higby to Hill was valid as against the attaching creditors, still the effect of the adjudication of Higby as a bankrupt operated to dissolve the lien effected by Banker Bros'. attachment, and that under the provisions of section 70a-e, Bankr. Act 1898 (Act July 1, 1898, c. 541, 30 Stat. 565, 566 [U. S. Comp. St. 1901, pp. 3451, 3452]) the trustee of the bankrupt became vested only with such title in the hogs in controversy as Higby had, and that Higby, at the time he was adjudicated a bankrupt, had no title in the property in controversy that would be good against plaintiff. We shall discuss these propositions in the order named.

Wilson's Rev. & Ann. St. 1903, §2775, provides that:

"Every transfer of personal property is conclusively presumed if made by a person at the time having the possession or control of the property and not accompanied by an immediate delivery and followed by actual and continued change of possession of the

thing transferred, to be fraudulent and therefore void against those who are his creditors while he remains in possession, and the successors in interest of such creditors and against any person on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or incumbrancers in good faith subsequent to the ·transfer."

Whether there was a change of possession of the property in controversy, so that the sale from Higby to Hill was valid against Banker Bros., the attaching creditors, under the above section of the statute, is a mixed question of law and fact; and, since the facts have been ascertained and determined by the trial court, and the evidence is not before this court for review, it is a question of law in this court whether such facts found constituted the delivery and change of possession contemplated and required by law. *Mead v. Noyes,* 44 Conn 487. This section of the statute has so frequently received the attention of the territorial Supreme Court, and been so often construed by it, that we need not enter into any lengthy discussion of its terms. *Ranney-Alton Mercantile Co. v. Hanes et al.,* 9 Okla. 471, 60 Pac. 284; *Walters v. Ratliff, Sheriff,* 10 Okla. 262, 61 Pac. 1070; *Swartzberg v. Dickerson et al.,* 12 Okla. 566. 73 Pac. 282; *Washburn v. Oats,* 14 Okla. 5, 76 Pac. 151.

In *Ranney-Alton Merc. Co. v. Hanes et al., supra,* the Hanes Grocery Company, composed of R. L. Hanes and others, who owed the Ranney-Alton Mercantile Company, sold out their stock of merchandise, located in Oklahoma City, to T. C. Hanes and one Johnson, who were employes of the Hanes Grocery Company. The sale was made while R. L. Hanes was at Sulphur Springs, in what was then the Indian Territory. T. C. Hanes who had been in possession of the stock of goods during the absence of R. L. Hanes, and Johnson continued in possession of the stock of goods after the sale, and some change was made in the sign upon the store, and there was some evidence to the effect that some of the employes were told of the change in the ownership of the property. Shortly after this transaction toook place, the Mercantile Company brought suit against R. L. Hanes, and attached

the stock of goods. The court, in commenting upon these facts, used the following language:

"Therefore we think, taking into consideration the peculiar relations of the parties, that this sale was made at a distance from where the goods were located, without an examination as to the vendees, as to the kind, quality, or amount of the goods, that no inventory was taken, and that there was no manual change of possession, and no visible change in the arrangement of the store. It does not seem to us that there was such a change of possession as would render such a sale valid as against creditors of Lee Hanes, or of the Hanes Grocery Company."

In *Walters v. Ratliff, Sheriff, supra,* Mr. Chief Justice Burford, who delivered the opinion of the court, used the following language:

"There was nothing in the evidence from which it could be fairly and reasonably inferred that any open, positive change of possession ever took place. There was nothing done by which the general public could discern any outward signs of a change in possession. There was no evidence of such a delivery as the circumstances of the case would reasonably admit of; hence the court was bound to hold, as a matter of law, that the attempted sale or transfer of the wheat was fraudulent and void as to creditors of John Walters."

In *Washburn v. Dickerson et al., supra,* the court laid down the rule that the change of possession contemplated by the statute must be open, notorious, and unequivocal, and such a change as to apprise the community, or those who are accustomed to dealing with the party, that the goods had changed hands, and the title had passed from the vendor to the vendee. In that opinion the court has placed a greater burden upon the vendee, as to the character of the change of possession required by the statute in order to entitle him to hold as against attaching creditors, than is required by the rule of any other opinion we have read, in that it requires the change of possession to be "notorious."

The rule announced by the Supreme Court of the territory of Dakota from which territory this statute was taken, in the case of

*Grady v. Baker,* 3 Dak. 296, 19 N. W. 417, which case has been repeatedly cited with approval by the Supreme Court of the territory of Oklahoma, lays down, we think, the correct rule in the following language:

"It means that the sale shall be open and public; that the world may be apprised of the change of ownership. The change of possession must be actual and continued, and not subject to some secret trust between the seller and the buyer."

In the case at bar the sale was consummated several miles from the place where the property was located. Plaintiff had never seen the property, and did not see it until after this suit was filed. Higby, the vendor, continued as the party in possession of the property subsequent to the sale, as he was before. No change of marks were made upon the hogs, nor was there anything done to indicate that any change in the ownership of the hogs had taken place, except the execution of the bill of sale, containing the clause that the "hogs are to be held by Higby until said J. C. Hill orders them delivered in Kingfisher, time not to exceed fifteen days," which was placed upon record; but there is no provision of the statute which permits the substitution of the execution of a bill of sale, and placing the same upon record, in lieu of the requirements of section 2775, which requires an immediate delivery of the property conveyed, followed by actual and continued change of possession. The only change of possession found by the trial court was the change effected by the bill of sale, which was from Higby as owner to Higby as agent of Hill the vendee, but this is not such a delivery and change of possession as is required by the statute.

In *Washburn v. Oats, supra,* the evidence, tending to establish a delivery from the vendor to the vendee and a change of possession, was much stronger than in the case at bar. In that case, as in this case, there was a bill of sale executed by the vendor to the vendee on the property conveyed, and the same was placed upon record by the vendee, and the vendee, as a partner of the vendor subsequent to the sale, was for a time in the

actual possession of the property conveyed, but the court held in that case that the delivery and change of possession was not such as was required by the statute, and that the sale was void as against the attaching creditors of the vendor.

The case of *Mosgrove v. Harris,* 94 Cal. 162, 29 Pac. 490, presents a state of facts almost identical with the facts found by the trial court in the case at bar. In that case a number of hogs were sold by one Leberry to Mosgrove. The sale was made at a distance from the ranch of Leberry, where the hogs were located, and the vendee had never seen same prior to his purchasing them. By the terms of the sale the hogs were to remain in the possession of Leberry, as the agent of Mosgrove, the purchaser. Mosgrove paid a valuable consideration for the hogs. Shortly after the sale the creditors of Leberry attached the hogs sold to Mosgrove, and the court held, in an action for possession of the hogs brought by Mosgrove against the sheriff who levied the writ of attachment, that the sale of Leberry to Mosgrove, not being accompanied by the change of possession required by the statute of California, which is the same as the statute under consideration in this case, was a fraudulent and void sale. Under the doctrine of that case, and under the well-settled and, as we think, the correct construction of the statute by the territorial Supreme Court, the trial court erred in holding that the sale in the case at bar is valid as against the attaching creditors.

At the time this action was filed, and at the time Higby was adjudged a bankrupt, the attachment lien of Banker Bros., on the property in controversy, was superior to the rights of the plaintiff, and plaintiff was not entitled to the possession of the property as against Banker Bros., at the beginning of this action. Section 67e of the Bankruptcy Act of 1898 provides that two classes of conveyances, transfers, assignments, or incumbrances of his property, made by an insolvent debtor at any time within four months prior to the time of the filing of his petition in bankruptcy, shall be void. The first class of these conveyances is described in the first part of the paragraph, and includes all con-

vcyances, transfers, or incumbrances made with intent on the part of the debtor to hinder, delay, or defraud his creditors or any of them. This class of conveyances is declared by the section to be void, except as to purchasers in good faith and for a present fair consideration, and that all of the property of the debtor conveyed, transferred, or assigned or incumbered as aforesaid shall, upon the debtor's becoming adjudged a bankrupt, if the same is not exempt from execution and liability for debts by the law of the debtor's domicile, be and remain a part of the assets and estate of the bankrupt, and shall pass to his trustee. The second class of conveyances is described in the latter part of the section, and consists of all conveyances, transfers, assignments, and incumbrances of the debtor's property which are held null and void as against the creditors of the debtor by the law of the state, territory, or district in which the property is situated, and all property conveyed by this second class of conveyances, upon the debtor's being adjudged a bankrupt, shall pass to the assignee, and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt. The two conditions common to both of these classes of conveyances are that they shall be made within four months prior to the debtors being adjudged a bankrupt, and while he is insolvent. The conveyance made by Higby to Hill in the case at bar belonged to this second class of conveyances, in that it is declared fraudulent and void under the statute of the territory where the property was located.

Section 70 of the same act, in subdivisions "a" and "e" thereof, provides that the trustee of the estate of a bankrupt, upon his appointment and qualification, shall be vested, by operation of law, with the title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, and that he may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover property so transferred or its value from the person to whom it was transferred, unless he was a *bona fide* holder for value prior to the date of the adjudication. It is contended by

defendant in error that, under this section of the bankrupt law, the trustee in bankruptcy, upon Higby's being adjudged a bankrupt, became vested with only such title as Higby had at the time of the adjudication, and that Higby had no title in the hogs in controversy that was superior to the title and claim of defendant in error, but plaintiffs in error do not rely upon section 70, subdivisions "a" and "e," for their right of recovery in this action. If they did, defendant in error's contention would be correct, if he was a holder in good faith for value of the property in controversy at the time of the adjudication.

Section 67f Bankr. Act 1898 (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), provides that all levies, judgments, attachments, or other liens, obtained through legal proceedings, against a person who is insolvent, at any time within four months prior to the filing of the petition in bankruptcy against him, shall be deemed null and void. In case he is adjudged a bankrupt, the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as part of the estate of the bankrupt unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate, and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate, and the court may order such conveyance as shall be necessary to carry the purpose of this section into effect.

Section 67e vests, by operation of law, in the trustee the title to all property conveyed by the debtor, by means of fraudulent and void conveyances described within said section, consisting of the two classes heretofore enumerated.

Section 70e applies to conveyances effected by fraud under the common law, as well as under statutory law, not confined to those having been executed within four months prior to the adjudication. *In the Matter of Gray*, 47 App. Div. (N. Y.) 554, 62 N. Y. Supp. 618; *In re Mullen* (D. C.) 101 Fed. 413. These

sections need not be further considered here, and they have been mentioned only to show that they have not been overlooked.

Under section 67f the trustee may become vested, either with the title of the bankrupt in all property affected by levies, judgments, attachments, or other liens that may have been obtained through legal proceedings against the bankrupt, within four months prior to the filing of the petition, while he was insolvent, free of such levies, judgments, attachments, or other liens, if it is not otherwise ordered by the court, but upon order of the court the right of the creditor, under such levy, judgment, attachment, or other lien, may be preserved for the benefit of the estate; and, if the court so orders, the trustee then becomes vested with the title and rights of the creditors, and his right to recover is not dependent upon the provisions of sections 67e, 70a, and 70e. In the early interpretation of section 67f by the courts there was some contradiction as to whether this section applied in cases where the adjudication was upon a voluntary petition, but the overwhelming weight of authority now is that it applies both in voluntary and in involuntary proceedings. Collier on Bankruptcy (6th Ed.) p. 567; *In re Richards,* 96 Fed. 935, 37 C. C. A. 634.

When the court made an order in the bankruptcy proceedings of Higby that the attachment proceedings of Banker Bros. be not dissolved by the adjudication in bankruptcy, but that the lien thereby effected be continued and perfected for and on behalf of the creditors of the bankrupt, the trustee, J. A. Banker, upon his appointment and qualification as trustee, became subrogated to all the rights of the attaching creditors, Banker Bros., and did not become subrogated by such order to the rights and title of the bankrupt, because that would have resulted if no order had been made, for the reason that, under the first part of subdivision "f" of said section 67, the attachment lien of Banker Bros., having been effected within four months prior to the adjudication of Higby as a bankrupt, by such adjudication would have become dissolved, and whatever rights or title Higby had in the property in controversy would have passed

to the trustee as a part of the estate of the bankrupt free of such lien; but, upon order of the court to preserve the lien, the trustee became vested with the rights of the creditor, not of the bankrupt, and section 70 and its subdivisions neither give to the defendant trustee any rights in this action, nor in any way control the same.

The rights of Banker Bros., the attaching creditors, under their lien were to have the lien foreclosed upon the property in controversy, and the proceeds from the sale of same applied in the payment and discharge of the debt due by Higby to them, for which they obtained judgment; and, since the sale of Higby to the plaintiff Hill was void as to Banker Bros., and in no way defeated their rights under their lien, it in no way affected the rights of J. A. Banker, the trustee, who became subrogated to all the rights of Banker Bros, under said lien.

In *Receiver of Virginia Iron, Coal & Coke Co. v. Staake,* 133 Fed. 717, 66 C. C. A. 547, the Circuit Court of Appeals of the Fourth Circuit held that the attachment lien could be preserved under section 67f of the bankruptcy act for the benefit of the bankrupt's estate, although the property subject thereto did not belong to the bankrupt, except as to the attaching creditors, and could not have been reached by the trustee except for the attachment. In that case the bankrupt, more than four months prior to his adjudication as a bankrupt, sold certain real estate owned by him in Virginia to the Roanoke Furnace Company, and received therefor the sum of $500,000, but he did not execute a deed for same at the time of the sale. The Furnace Company took immediate possession, in December, 1899, of the property sold. On November 5, 1900, deed was executed to the Furnace Company for the property, but in October prior thereto nine different attachments by creditors of the bankrupt had been levied upon the property. Under the provisions of the laws of Virginia, no deed having been executed and placed upon record prior to the levy of the attachments, the attaching creditors' liens were superior to the rights of the Furnace Company under its deed. Within

four months from the levying of the attachment the debtor was adjudicated a bankrupt upon an involuntary petition. The court made an order in the bankruptcy proceedings that the attachment liens should be preserved for the benefit of the bankrupt's estate, and directed that the trustee of the bankrupt's estate be subrogated to the rights of the attaching creditors, and authorized and empowered to enforce the attachment liens with like force and effect as the attaching creditors might have done had the bankruptcy proceedings not interfered. Upon a hearing before the United States District Court, the judge held that the trustee took the lien, subject to the claims for compensation by the attorneys who procured the attachment, and the United States Circuit Court of Appeals, on appeal, in discussing the application of section 67f, used the following language:

"A primary object of the bankrupt law is to prevent preferences and compel equality among creditors of the bankrupt, and there can be no doubt that the sequestering of attachment liens, such as those in question in this case, for the benefit of the general creditors, does produce equality and prevent preferences. The rule that the trustee takes the estate of the bankrupt in the same plight as the bankrupt held it is not applicable to liens which, although valid as to the bankrupt, are invalid as to creditors. * * * In the present case the sale by the bankrupt was void as against attaching creditors for want of a recorded deed. The property was levied upon by creditors, and by virtue of the attachments might have been sold under judicial process against the bankrupt. The levy was within four months of the filing of the petition in bankruptcy, and under section 67f the lien is reserved for the benefit of his estate."

Similar construction was placed upon this section by the court in *Re New York Economical Printing Co.,* 110 Fed. 514, 49 C. C. A. 133, and the rule announced in these two cases is in harmony with the weight of authorities in which this section of the bankruptcy act has been discussed.

It is not necessary for us to determine what would be the right of defendant, J. A. Banker, trustee, in this case if the order of the court subrogating him to all the rights of the attaching

creditors had not been made, and their attachment lien had been dissolved by the adjudication, for that question is not before the court.

The judgment of the trial court is reversed and the cause remanded, with instructions to enter judgment in conformity with this opinion.

All the Justices concur.