## THE KANSAS MOLINE PLOW COMPANY V. G. W. SHERMAN.

FRAUDULENT CONVEYANCE — *Notice*. Where a transfer of property is made for the purpose, or with the intent, on the part of the person making such transfer, to hinder and delay creditors, it is fraudulent and void; and the conveyance is fraudulent and void, also, as to the transferee, if, at the time, or before the making, of the transfer,

the transferee had notice of such facts and circumstances as would arouse the suspicion of an ordinarily prudent man and cause him to make inquiry as to the purpose for which such transfer is being made, which would disclose the fraudulent intent of the maker; and it is not necessary. in order to defeat such a transfer to show that the transferee had actual notice of, or was a participant in. the fraud of the maker of the transfer. The former holding of this court on this question in the case of *Chandler v. Colcord*, 1 Okla 260, is overruled.

*Error from the District Court of Oklahoma County.*

*Selwyn Douglass*, for plaintiff in error.

*Amos Green & Son*, for defendant in error.

The opinion of the court was delivered by

BIREER, J.:    The Kansas Moline Plow company brought suit in the district court of Oklahoma county on the 11th day of September, 1893, against J. R. Sherman, to recover the sum of $1,821.76, in which amount the plaintiff claimed J. R. Sherman was indebted to it upon certain promissory notes and an open account for goods, wares and merchandise sold and delivered to J. R. Sherman. The next day, an order of attachment was issued in the case and the property in controversy levied upon. G. W. Sherman, by leave of court, interplead in the cause, claiming that he was the owner of the goods attached by virtue of a purchase made from J. R. Sherman on the 6th day of September, 1893. Upon issues being formed upon this interplea, a trial was had before the court and a jury, and a verdict and judgment given and rendered for the interpleader, G. W. Sherman, for the value of the property, and damages, from which the plaintiff appeals.

The evidence given upon the trial of the case is quite voluminous, and it is unnecessary to give it in detail. It is sufficient to state briefly that there is evidence tending to show that J. R. Sherman engaged

in the hardware and implement business in Oklahoma City in July, 1892, having purchased a stock of a former merchant; that on the 6th day of September, 1893, he was largely indebted to various creditors, a part of which indebtedness was falling due and was unpaid. G. W. Sherman, a brother of J. R. Sherman, who had been residing in northern Ohio, after some correspondence with J. R. Sherman, came to Oklahoma City during the latter part of August, 1893, and went into his brother's store, where he clerked for a couple of weeks before September 6, 1893. He brought with him from Ohio some six or seven hundred dollars, and with little, if any, other visible means, knowing that his brother was indebted to various creditors in amounts which he states he believed to be about $2,500, he purchased the entire stock of goods of his brother, which was all the visible assets his brother had, and all the property subject to execution, although J. R. Sherman states that he had notes in the bank uncollected, and some in his own possession, amounting to several thousand dollars. An invoice hurriedly made, and without attracting the attention of the clerks in the store up to the very date of the alleged transfer of the stock of goods, amounted to about $4,000, and the stock and about $600 worth of notes were transferred by contract and bill of sale to G. W. Sherman in consideration of the payment of $600 in cash and of eight notes (though J. R. Sherman says he does not know whether there was eight or nine) of $500 each, due in successive payments, one each two months, beginning two months from the date of the sale. The stock was transferred to G. W, Sherman, he giving back to his brother a chattel mortgage thereon to secure these deferred payments. J. R. Sherman remained in and about the store, transacting business to all appearances as before, and made purchases of goods, which were charged to him the same

as before, excepting that G. W. Sherman employed the clerks. Before the goods were attached G. W. Sherman paid from the sales of the goods $300 additional in cash, and subsequently, and before the trial, turned back to his brother the accounts which he had purchased with the stock, it is stated, for collection, and J. R. Sherman delivered back to his brother all of the $500 notes excepting three, although no further payments were made thereon. There is also testimony tending to show that about the 9th day of September, 1893, the representative of one of the wholesale houses to which J. R. Sherman was indebted, presented an account of $165 for payment, but J. R. Sherman told him that he could not pay this account because he had not gotten his money yet from the sale of the stock.

J. R. Sherman denied that the transfer was made with the intent to hinder, delay or defraud his creditors, as did also his brother. The case was submitted to the jury, evidently, on the theory that the evidence was such as made the question of the existence of fraud a question of fact for the jury to determine, and this theory of the case seems to have been considered proper on both sides. At least no objection seems to have been made to the court considering it in this way, and it was so considered. The only question raised in the case is as to the correctness of the instructions given by the court to the jury, and it is claimed that the court erred in refusing, on the application of plaintiff, to instruct the jury that if the transfer was made by J. R. Sherman to defraud his creditors, it was also fraudulent as to the vendee, G. W. Sherman, if he was in a position where a reasonably prudent man could, and would, have known of the fraudulent intent of the vendor, and that if the vendee had notice of such facts as would awaken the suspicion of a man of ordinary prudence and lead him to make inquiry, which, if pursued, would have led to

his full knowledge of the fraud of the vendor, he was chargeable with notice of the vendor's fraudulent intent. The plaintiff asked these instructions in different forms so that the question as to whether or not the plaintiff was entitled to an instruction of this character is clearly raised. The court refused this request, but gave the instruction in a modified form, to the effect that the jury could not find that the transfer was fraudulent and void as against G. W. Sherman, unless they should find from a preponderance of the evidence that he had notice or knowledge of the fraudulent intent on the part of J. R. Sherman. It is claimed by plaintiff in error, and it is not disputed by the defendant in error, that it was the view of the learned judge who tried the case below that it was entitled to the instruction asked, but that it could not be given because of the decision of this court in the case of *Chandler v. Colcord*, 1 Okl. Rep, 260, where it was held erroneous to give the jury just such an instruction. If we consider the decision of *Chandler v. Colcord* upon this question to be good law, no further consideration of this case would be necessary, but the matter would end at once by affirmance of the judgment of the court below. But we do not believe that the conclusion there reached on the proposition of law here involved was correct, either as a determination of what the law of fraudulent conveyances is in this territory by virtue of the adoption of the laws of another jurisdiction, or from a consideration of the decisions generally upon the question. We would, in fact, were it not for the *Chandler v. Colcord* decision, consider the question so well settled by the authorities as to make it entirely unnecessary for us to consider the matter at any length. But this court, having decided the law differently from what it is contended to be by plaintiff in error, the overruling of our former decision should be attended by such a con-

sideration of the matter as to show that we are not only justified, but are required to do so. The question involved in the *Chandler v. Colcord* case in point in this, was, as to the correctness of two instructions given by the probate court, the one of which pertinent to the case at bar, is as follows:

" First.   The court further instructs the jury, that when a transfer of property is made, with intent, on the part of the person making it, to hinder, delay or defraud his creditors, and the party to whom the transfer is made had knowledge of the facts and circumstances, from which such fraudulent intent might reasonably and naturally be inferred by an ordinarily cautious person, then such transfer is fraudulent and void as as against the rights of the creditors."

Concerning this instruction, the court held :

"As to the instructions which appear to have been given at the instance of appellee, the first and third were erroneous and should not have been given.   A fraudulent intent on the part of a vendor, or mortgagor, to hinder, delay and defraud his creditors, is not of itself sufficient to defeat the sale, or mortgage. It is essential to that end that the vendee, or mortgagee, should participate in that design.   The fraudulent intent must be mutual." (*Maxsell v. Williamson*, 35 Ill. 529; *Herkelrath v. Stookey*, 63 Id. 486.)

The matter for consideration in that case was, as is also in the case at bar, a question of notice, rather than the question of fraud itself.   It was a question of good faith on the part of the transferee rather than the question as to whether or not the transfer itself was in violation or the rights of creditors, and therefore void.   The conclusion reached by the court that the instruction there given, and designated as "first" of the two which were being considered together, was erroneous, is not, in our judgment, supported either by the authorities upon which the conclusion was based, or by the law on the question.   In the case of *Mixsell v. Williamson*, the trial court was asked to instruct the

jury that, if they believed from the evidence that the mortgage was not *bona fide*, but was made to hinder and delay creditors of said Mixsell, then the jury are to find the defendant not guilty. The supreme court held that the objections to this instruction were obvious; that "the intent of P. Mixsell to delay and hinder his creditors, is not, under repeated decisions of this court, sufficient. This intent must be mutual, both the mortgagor and ·mortgagee must harbor the intent." And in the case of *Herkelrath v. Stookey*, the trial court instructed the jury that if the mortgage was made to hinder, delay and defraud creditors, it was void, even though the mortgagee had just claims against the. mortgagor, and the court held :

"If this instruction had been so framed as to require both the mortgagor and mortgagees to have participated in the fraudulent intent, in order to avoid the mortgage, it would have been unobjectionable. The jury, however, would probably understand such an instruction as referring only to the intent of the mortgagor. A fraudulent intent on his part alone would not vitiate the instrument."

It will be observed ·that the decision in neither of these cases was upon the question as to whether, if the transfer was fraudulent—that is, if it was a transfer which the party making the conveyance was prohibited by law from making, or if the conveyance was one which was made in violation of the rights of creditors—the transferee must have had actual notice of such fraud and such fraudulent intent on the part of the maker of the transfer, or whether or not notice of such facts and circumstances as would put a reasonably prudent man on inquiry, would have been sufficient to deprive him of the character of a *bona fide* purchaser. Manifestly, in order to make a transfer void as against the rights of creditors, there must be something more than simply fraud on the part of the parties making the transfer. If the transferee has no

notice, he is not, under the Illinois decisions, a participant in the fraud, and the conveyance cannot be held void as to him, simply because the transfer is fraudulently made by the maker thereof, and an instruction which made the transfer fraudulent, simply because of the conduct of the person making the transfer, and which left entirely out of consideration the conduct of the transferee, was manifestly erroneous. The learned chief justice was probably drawn into the error which was committed in holding that the instruction under consideration in the case of *Chandler v. Colcord*, was erroneous, by giving too much consideration to the term "participation," as he drew it from the Illinois decisions, and gathering from them that the participation on the part of the transferee which would make the conveyance fraudulent, must be some affirmative action on his part in consummating the fraudulent intent of the maker of the instrument. It does not mean this, when used with reference to fraudulent conveyances. It does not mean that the vendee or mortgagee should do any act in furtherance of the fraudulent design of the maker, other than the taking of the fraudulent conveyance with knowledge or notice, direct or constructive, that the conveyance is a prohibited one, and is made by the person who makes it with the fraudulent intent to hinder or defeat his creditors. The transferee is a participator in the fraud, where that term is used, if he takes the fraudulent conveyance under circumstances where the law will impute to him knowledge of the purpose of the maker of the conveyance, without his actively taking part in the fraudulent design of the transfer other than the taking of it.

Bump, in his valuable work on Fraudulent Conveyances, on p. 200, says:

"If the grantee has notice of the debtor's fraudulent intent, the transfer is void without reference to

his actual intent.   The law in such case charges him with that guilty knowledge which makes him a participator in the fraud."

Again, on page 202, he says:

"If he has notice of such facts and circumstances, he is considered either to know the fraudulent intent, or to purposely omit to make those inquiries which an ordinarily cautious and prudent man in the same situation would make.   And in either case he is chargeable with participation in the fraud."

So the question as to whether or not the transferee must participate in the fraud of the vendor in order to make a conveyance void, does not determine the question in controversy.   If that term is used to designate the conduct of the vendee or mortgagee, which will make the transfer void, it does not determine that the instruction which was given by the lower court in *Chandler v. Colcord* was erroneous, for he is a participator if he takes it with knowledge of the fraudulent design and purpose of the person making the fraudulent conveyance.   We do not think, however, that this is an apt word to use.   Its ordinary meaning might be taken to imply the requirement of more activity on the part of the transferee than is necessary to be shown, and it does not properly comprehend the great variety of cases in which the conduct on the part of the transferee will make the transfer, which is fraudulent on the part of the person making it, also fraudulent on the part of the person who takes the transfer.   To make a transfer which is fraudulent as to the person making it, also fraudulent as to the person taking it, requires nothing more to be shown than simply that the vendee had notice of such facts as would, under the law, prevent his taking it.

Our statutes defining the rights of debtor and creditor, and with reference to the law of notice, actual and constructive, are adopted from Dakota, and there

it was held, in *Gress v. Evans*, 1 Dak. 387, prior to the time we adopted its statute, that:

"Actual notice of a prior unrecorded conveyance, or of any title, legal or equitable, to the premises, or knowledge and notice of any facts which would put a prudent man upon inquiry, impeaches the good faith of the subsequent purchaser. There should be proof of actual notice of prior title, or prior equities, or circumstances tending to prove such prior rights, which affect the conscience of the subsequent. purchaser. Actual notice, of itself, impeaches the subsequent conveyance. Proof of circumstances, short of actual notice, which would put a prudent man upon inquiry, authorizes the court, or jury, to infer and find actual notice. Or to express it exactly, good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms and technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious. And notice is either active or constructive. Actual notice consists in express information of a fact. Constructive notice is notice imputed by the law to a person not having actual notice; and every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

In *Young v. Harris*, 4 Dak. 367, decided in 1887, the following instruction: "I also instruct you that a transfer of personal property, made with intent on the part of the seller to delay and defraud his creditors, and the party to whom the transfer is made has knowledge of the facts and circumstances from' which such fraudulent intent might reasonably and naturally be inferred by an ordinarily cautious person, is fraudulent and void against the rights of creditors," while it was held to be as liberal as the person attacking the conveyance, on the ground of fraud, could claim the law to be, was yet held to be proper as limiting

and qualifying the expression, "in good faith," used in another part of the instructions.

In *Shauer v. Alterton,* 151 U. S. 607, the proper construction of the Dakota statute with reference to fraudulent transfers was before the supreme court of the United States. Concerning it, Mr. Justice Harlan, after referring to the construction placed upon the law in Dakota, and in holding that the instruction which was given by the trial court, under the Dakota statute, similar to that which was asked for by the plaintiff below, was proper, said:

"A less stringent rule can not be applied to the Dakota statute relating to transfers of property with intent to delay or defraud creditors. The plaintiff had the right, by a purchase of his brother's stock of merchandise, to obtain payment of his claims in preference to the claims of other creditors. But the statute of Dakota, however liberally construed in favor of purchasers from a fraudulent debtor, will not permit him to enjoy, to the exclusion of other creditors, the fruits of his purchase, when the sale was made with the intent to delay or defraud other creditors, if he had, at the time, actual notice of such intent or knowledge of such circumstances or facts as were sufficient to put a prudent person upon an inquiry that would have disclosed the existence of such intent upon the part of the vendor. The plaintiff could not properly have claimed a more favorable interpretation of the Dakota statute than was given to it by the court below. A statute that declares every transfer of property, made with intent to delay or defraud any creditor of his demands, void against all creditors of the debtor, would be wholly defeated in its operation if the rights of the transferee were not subject to the rule that 'whatever is notice enough to excite attention and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led." (*Wood v. Carpenter,* 101 U. S. 135, 141; *Kennedy v. Greene,* 3 Myl. & K. 699, 722.)

The case of *Sahuer v. Alterton* was an appeal from a desision of the supreme court of the territory of

Dakota, rendered also before we adopted the Dakota statute, and these citations and excerpts from decided cases will certainly be amply sufficient to show what the law is, and was, in the jurisdiction from which we have borrowed our statute, and what the law is, by adoption here; and the rule, which we think the proper one, not only has the law itself engrafted into the jurisprudence of this territory to support it, but is amply supported by the decisions of the highest courts in the states.

In *Hough v. Dickinson*, 58 Mich. 89, the trial court had given the following instruction: "(9) A fraudulent intent cannot be inferred by the jury without proof, but it must be proved like any other act to the satisfaction of the jury; and unless such fraudulent intent is proved on the part of both Pier & Wagley and Hough & Wagley by a preponderance of the evidence, the verdict of the jury should be for the plaintiffs." Concerning this, the court said :

"The charge as given in the ninth request is not in accordance with the rule as laid down by the courts upon the subject. A fraudulent intent on the part of Pier & Wagley, and notice or knowledge of such intent on the part of Hough & Wagley, is sufficient to avoid the sale, without any proof whatever of actual fraudulent intent on the part of these latter parties. It is generally held that knowledge of facts sufficient to put an ordinarily prudent man on inquiry is all that is required, and the charge of the court went too far."

A very late expression of the rule in Kansas is found in the following langage taken from the opinion in *Martin v. Marshall*, 54 Kan. 147: " That good faith is essential to support the sale, cannot be questioned. If Martin & Co. knew of the fraudulent intent of the Pelletiers, and bought with that knowledge, they cannot claim to be *bona fide* purchasers. 'Knowledge of facts sufficient to excite the suspicions of a prudent man and put him upon inquiry is, as a general propo-

sition, equivalent to a knowledge of the ultimate fact.'" (*Phillips v. Reitz*, 16 Kan. 396; Tied. Sales, § 329; *Schulein v. Heiner*, 48 Kan. 249.")

By Mr. Justice Johnston, speaking for the court in *Gollober v. Martin*, 33 Kan. 252, it is said : "Actual knowledge by a vendee of the fraudulent intent of the vendor is not essential to render the sale void. If the facts brought to his attention are such as to awaken suspicion and lead a man of ordinary prudence to make inquiry, he is chargeable with notice of the fraudulent intent, and with participation in the fraud." (Citing, *Phillips v. Reitz*, 16 Kan. 396; *Kurtz v. Miller*, 26 id. 314; *McDonald v. Gaunt*, 30 id. 693.)

In *Bollman v. Lucas*, 22 Neb. 796, Mr. Justice Cobb, in defining the rule in that state, and speaking for the court, said :

"Throughout the series of instructions given at the request of the plaintiff, the jury are told, more or less explicitly, that while the sale of the goods by McClintock & Wilson may have been made with whatever fraudulent intent to hinder, delay, and defraud their creditors, although this fraudulent intent on their part may have been known to the plaintiff, yet if the purchase on his part was made *bona fide*, and solely for the purpose of collecting a debt due him from them, then the sale is good and unaffected by the fraudulent intent of McClintock & Wilson. This is not the law as understood by this court. In the case of *Temple v. Smith*, 13 Neb. 513, cited by counsel for plaintiff in error, the court. in the opinion of the present Chief Justice, say : 'But when a purchaser has notice of the fraudulent intent of the person from whom he purchases, or has notice of such facts as would put a man of ordinary prudence upon inquiry, which would have led to a knowledge of the fraudulent purpose of the person selling the goods, he is not a *bona fide* purchaser.'" (Citing *Zuwer v. Lyons*, 40 Iowa, 510; *Jones v. Hetherington*, 45 id. 681; *Bradford v. Beyer*, 17 Ohio St. 388; *Brown v. Cutler*, 8 Ohio 142.)

The same rule is announced in *Dorrington v. Minnick*, 15 Neb. 397.

In *Hoosier v. Hunt*, 65 Wis. 71, Cole, chief justice, announces the well settled rule of that state in the following language:

"The words 'actual notice' in § 2243 R. S., and 'previous notice' in § 2324 R. S. are equivalent expressions; and the rule is stated in the opinion 'that notice must be held to be actual when the subsequent purchaser has actual knowledge of such facts as would put a prudent man upon inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of the right or title in conflict with that which he is about to purchase. Where the subsequent purchaser has knowledge of such facts, it becomes his duty to make inquiry, and he is guilty of bad faith if he neglects to do so, and consequently he will be charged with the actual notice he would have received had he made the inquiry.'"

This language was used in a case involving, as the one at bar does, the question of a fraudulent conveyance to hinder and delay creditors, and the case is fully parallel to the one at bar, because, as heretofore suggested, we have a statute with reference to actual and constructive notice in this territory, and which provides that (2673): "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable dilligence is deemed to have constructive notice of the fact itself."

In *Singer v. Jacobs*, 11 Fed. 559, Judge Caldwell, stating the opinion for the court, after holding that to avoid a sale on the ground of fraud, it is not necessary that the purchaser should have actual notice of the fraudulent purpose of the vendor, uses the following language of Bigelow on Fraud, p. 289:

"If facts are brought to the knowlege of a party which would put him as a man of common sagacity upon inquiry, he is bound to inquire, and if he neglects

to do so he will be chargeable with notice of what he might have learned upon examination."

Bump, in his treaties on Fraudulent Conveyances, sums up the rule on p. 201, as follows:

"It is not necessary that the grantee shall have actual knowledge of the debtor's intent to delay, hinder or defraud his creditors in order to render the transfer void. A knowledge of facts sufficient to excite the suspicion of a prudent man and to put him on the inquiry, or to lead a person of ordinary perception to infer fraud, or the means of knowing by the use of ordinary diligence, amounts to notice and is equivalent to actual knowledge in contemplation of law. * * * If he has notice of facts sufficient to put him on the inquiry, he cannot be deemed a *bona fide* purchaser."

On page 203, he says:

"It is not necessary that the debtor and the grantee shall be actuated by like motives to cheat and defraud the grantor's creditors. The motives and intentions of the debtor and grantee may be different. If the grantee has notice at the time that the debtor is transferring his property to delay, hinder, or defraud his creditors, it will make the transfer void although he has no wish to defraud them, for the motive is imputed to him as a fraud in law, and makes him a *mala fide* purchaser."

A consideration of the numerous cases cited can certainly leave no doubt but that the instruction on the question here in controversy, and which was in the case of *Chandler v. Colcord* held erroneous, was correct, and that the instruction which was asked for in the court below should have been given. The jury were directly told that they could not hold the transfer void as to G. W. Sherman, even though they should find it was fraudulently made by J. R. Sherman, unless they should find that G. W. Sherman had notice of the fraud which J. R. Sherman was perpetrating upon his creditors, if his conduct was fraudulent. This did not go far enough in view of the request made by the

plaintiff. The plaintiff was entitled, on his request,
to have had the jury directed that it was not necessary
that G. W. Sherman should have had actual notice of
the fraud of J. R. Sherman, if there was any, that the
plaintiff was entitled to a verdict if there was fraud in
the transfer, and if G. W. Sherman had notice of such
facts as would cause him, as a prudent man, to sus-
pect the fraudulent conduct of the brother, if the jury
should find there was any. The instruction there
given, at least against the plaintiff's request, required
too high a standard of proof in order to enable the
plaintiff to sustain its charge of fraud against the
vendee, G. W. Sherman.

The decision in the case of *Chandler v. Colcord*, there-
fore, so far as it involves this question, is overruled,
and the judgment of the court below in this case is
reversed and a new trial granted at the costs of de-
fendant in error.

Scott, J., not sitting; all the other Justices con-
curring.