## R. C. Williams v. The Fourth National Bank of Wichita Kansas.

(Filed September 5, 1905.)

1. CONSTITUTIONAL LAW—Sale of Goods in Bulk. Sec. 1, of chap. 30, Session Laws of 1903, regulating the sale of stocks of merchandise in bulk is not inconsistent with section 6 of the organic act which provides that no law shall be passed impairing the right to private property; nor is it unconstitutional as being class legislation.

2. ATTACHMENT—When Not Justified. Where the evidence to support an attachment sued out on the ground of a fraudulent conveyance or disposition of the debtor's property, shows a sale in bulk of the stock of goods levied upon, but the court finds that such sale was in fact made in good faith and without actual fraud: Held such finding overthrows the statutory presumption of fraud, and in such case, the attachment cannot be justified, and should be dissolved.

3. PRESUMPTION, OVERTHROWN WHEN. A statutory presumption, which is not intended to be conclusive, may be overthrown by evidence of good faith.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before Frank E. Gillette, Trial Judge.*

*R. J. Ray* and *J. A. Fain,* for plaintiff in error.

*Sims & Wolverton,* for defendant in error.

Opinion of the court by

PANCOAST, J.: The defendant in error sued J. T. Williams upon a judgment theretofore recovered against him in the Indian Territory. An attachment was sued out upon an affidavit alleging a conveyance by the debtor of his property with intent to cheat, hinder and delay his creditors, and

levied upon a stock of drugs. R. C. Williams appeared as interpleader, and claimed the property levied upon, by virtue of a sale to him in bulk from the judgment debtor, his brother. This the bank in its answer denied, attacking the sale to the interpleader as fraudulent and void, by reason of non-compliance with the requirements of the act of 1903, regulating the sale of merchandise in bulk. The interpleader's reply was a general denial. Judgment was for defendant in error, and the interpleader brings the case here for review.

The material propositions contended for are: First, the invalidity of the act regulating sales of merchandise in bulk; and second, that a sale made without compliance with that act is not absolutely void, if made without actual fraud. Sec. 1. of chap. 30, Session Laws of 1903, provides:

"Section 1. That a sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, will be presumed to be fraudulent and void, as against the creditors of the seller, unless the seller and purchaser together shall at least five days before the sale make a full detail inventory, showing the quantity and so far as possible with the exercise of reasonable diligence, the cost price to the seller of each article to be included in the sale; and unless such purchaser shall at least ten days before the sale, in good faith, make full and explicit inquiry of the seller as to the names, places of residence, or place of business, of each and all of the creditors of the seller and the amount owing each creditor, and obtain from the seller written answers to such inquiries, and unless such purchaser shall retain such inventory and written answers to his written inquiries for at least six months after such sale, and unless the purchaser shall at least ten days before the sale in good faith notify, or cause to be notified, personally or by registered mail, each of the seller's cred-

itors, of whom the purchaser has knowledge, or can with the exercise of reasonable diligence acquire knowledge, of said proposed sale, and the cost price of the merchandise to be sold and of the price proposed to be paid therefor by the purchaser."

Section 2 provides a penalty for making false and incomplete answers by the seller to the inquiries mentioned in the first section, and section 3 excepts executors, administrators, receivers and public officers from the operation of the act.

In assailing the constitutionality of the act questioned, plaintiff in error lays particular stress upon the contention that it contravenes that portion of the organic act of this Territory which inhibits the passage of any law "impairing the right to private property." The act, it is true, does to some degree restrict owners of certain kinds of property from disposing of it in a particular way, without complying with certain conditions, but it is not for that reason necessarily inconsistent with the provision of the organic act quoted. The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority essential to the safety, health, peace, good order and morals of the community, and while the legislature may not constitutionally declare that void which in its nature is and under all circumstances must be entirely harmless, yet it may place such reasonable restrictions on the right of an owner in relation to his property as becomes necessary to conserve the interests of the public and to prevent frauds among individuals. The particular prohibition of the organic act referred to was not designed to interfere with the power of the legislature to protect property, and to promote morals and good

order. The many acts regulating the mortgaging and sale of personal property, the sales of poisons, requiring certain articles of food made in imitation of other well known articles to be branded with their names, and the like, are all statutes restrictive in character upon the rights of owners to deal with their property, and such as a strict adherence in construction to the letter of the organic act would denominate unconstitutional. But these are among the undoubted subjects of legislation. The evident purpose of the legislature was to provide for creditors in general protection against a class of sales to which fraud most frequently attaches. It is well known that the business of retailing goods, wares and merchandise is conducted largely upon credit, and furnishes abundant opportunity for the commission of frauds upon creditors, not usual in other classes of business, and gives rise to cases among the most common with which courts are called upon to deal.

The law does not, in its practical application to business life, interfere with the right of a citizen to hold and deal with his property as he sees fit to such an extent as to be within the prohibitory clause of the organic act; it prohibits no one from dealing in the usual and ordinary course, nor is it calculated to prevent the sale of stocks of goods in bulk, but is rather to be deemed a proper exercise of an authority with which the legislature is invested, and of a care entrusted to it. In our opinion, it operates only to the proper safeguard of public interests, and not to the impairment of vested rights. It may be because of it that sales of this class will be more circumscribed, less readily made, than heretofore; but if this be so, it is only another instance where private de-

sires must yield to public good, and is not one of unconstitutional enactment.

This question is not new. Statutes of similar import have had the consideration of other courts, and been uniformly upheld: and indeed, in certain cases, even though the prohibition is absolute and sales of this character are made utterly void, and not, as in the words of our statute, "presumed to be fraudulent and void," as against creditors of the seller. The following cases are in point, and uphold the doctrine herein enunciated: *John P. Squires & Co. v. Tellier et al.,* (Mass. 1904) 69 N. E. 312; *Walp v. Lamkin & Foster.* (1904) 76 Conn. 515, 57 Atl. Rep. 277; *Neas v. Borches et al.,* 71 S. W. 50; *McDaniels v. J. J. Connelly Shoe Co.,* 71 Pac. 37.

A further discussion, however, of the assignments of error enumerated cannot serve any good purpose, in view of the conclusion we have reached upon another feature of the case.

At the time of the rendition of judgment, the court below made certain findings of fact and conclusions of law, upon which the judgment was based. That portion relating to the sale of the stock of goods to the interpleader is that "the sale was in good faith, and no actual fraud practiced."

Now, the attachment here was sued out upon an affidavit alleging a fraudulent conveyance and disposition by the debtor of his property, with intent to cheat, hinder and delay his creditors, the specific act giving rise to the attachment proceeding being the sale in bulk to the interpleader of the stock of drugs levied upon. The statute governing does not go to the extent of declaring sales so made absolutely fraudulent and void, irrespective of any question of fraud in fact, but simply serves to shift the burden of proof, in this class of

cases, from him asserting the fraud to him against whom the fraud is charged, the language of the act being that sales in bulk made without a compliance with the statute shall be "presumed to be fraudulent and void." It was not the intent of the legislature to declare that proof of a non-compliance with the statute should be conclusive evidence of fraud; the words employed will not warrant such an assumption. The law goes no further than to raise a legal presumption, which relieves him in whose favor it exists from the necessity of proof, but, like other presumptions of this character, may be destroyed by rebutting evidence. (*Bates v. Prickett*, 5 Ind. 22, 61 Am. Dec. 73; *Billings v. Billings*, 2 Cal. 107; *Dugas v. Estitells*, 5 La. Ann. 559; *People v. Grand Co. Com'rs,* 6 Colo. 202; *Cain v. Robinson*, 20 Kans. 456.)

Here, then, existed, as a foundation for the attachment proceeding, a statutory presumption of fraud, which might be overcome by opposing evidence; and that this was done, it seems to us must necessarily follow from the finding of the trial court that the "sale was in good faith, and no actual fraud practiced." The trial court had presented to it for consideration and determination the question of fraud in the sale of the goods, on the one hand, being the presumption raised by the statute; on the other, the rebutting evidence; and from the evidence. the court sifts out the truth, and makes a finding which necessarily overthrows the presumption raised by the statute in the first instance. It seems clear to us that the fraud contemplated by the section of the statute authorizing an attachment upon the ground of a fraudulent conveyance or disposition of property in actual fraud, and not that denominated fraud in law, or constructive fraud; and a conveyance which if fraudulent at all is constructively so only under the provisions of a statute, is not ground for at-

tachment, where it affirmatively appears, as in this case, from the finding of the trial court, that the sale was made in good faith, and no actual fraud was contemplated or practiced. (*Shove v. Farwell,* 9 Ill. App. 256; *Princeton First Nat. Bank v. Kurt* , 22 Ill. App. 213; *Spencer v. Deagle,* 34 Mo. 455; *Forster v. Mullanphy Planing Co.,* 16 Mo. App. 150; *Belmont v Lane,* 22 How. Prac. 365; *Jefferson Nat. Bank v. Purcell,* 6 Ohio Dec. 936; *La Belle Iron Works v. Hill,* 22 Fed. 195; *Strauss v. Abrahams,* 32 Fed. 310.)

The finding of fact mentioned is not challenged here, and is conclusive upon this court. Such finding destroys the very foundation of the attachment proceeding. Without actual fraud in the transfer, no attachment will lie. The suing out of an attachment is purely a statutory proceeding and must be confined strictly to those grounds upon which the statute permits it to lie; that is to say, in this case, to an actual fraudulent disposition of the stock of goods in question.

The attachment here, therefore, cannot be justified on a conveyance which the court upon consideration definitely finds to have been made in good faith and without actual fraud. It follows the trial court committed error in not dissolving the attachment when the honesty and fairness of the transaction became sufficiently apparent to justify the finding of fact mentioned; and erred in its conclusion of law that the conveyance was fraudulent and void, since such conclusion of law was directly contrary and opposed to the finding of fact upon which it was predicated.

For the reasons given, the judgment of the court below is reversed, with directions to enter judgment for plaintiff in error on the special findings.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.