## ELLET-KENDALL SHOE CO v. ROSS *et al.*

### No. 869. Opinion Filed May 9, 1911.

### (115 Pac. 892.)

1.  **FRAUDULENT CONVEYANCES—Sales of Merchandise in Bulk —Statutory Provisions—Burden of Proof.** Section 1 of chapter 30, Sess. Laws 1903, regulating the sales of stocks of merchandise in bulk, does not make sales made in violation of said statute conclusively fraudulent and void, but makes the fact of any sale's having been made in violation of said act sufficient evidence to create a legal presumption of such fraud, and shifts the burden of proof to the debtor or those claiming under the sale to show that there was no fraud.

2.  **SAME—Knowledge of Grantee.** In an action between a creditor and the purchaser from a debtor alleged to have sold his property for the purpose of hindering and delaying his creditors, it is not sufficient for the creditor to show that the sale had the effect to hinder and delay the creditors; he must also show, where the purchase price was paid at the time of the sale, that the purchaser at or before the sale had notice of the fraud or had notice of such facts as would arouse the suspicion of any ordinary prudent man and cause him to make inquiry as to the purpose of the sale, which would have led to the discovery of the fraudulent intent of the vendor.

3.  **TRIAL—Refusal of Requests—Instruction Embraced in Charge Given.** It is not error to refuse a requested instruction that correctly states the law, where the same instruction or its equivalent has been embodied in another instruction.

4.  **FRAUDULENT CONVEYANCES—Transfer of Personalty—Sufficiency—Presumption.** Where there was evidence tending to show that the only change of possession made at the sale was that the vendee went into the store and directed the clerk who had formerly had charge of the business to take charge of the business, and to commence selling at not less than the cost, and that the clerk did so and conducted the business under the same name, in the same building wherein it had been conducted before the sale and wherein the vendor had his office before the sale and continued to keep it after the sale, and the same horse and wagon of vendor used for delivering before the sale were used afterwards, it was error to refuse to charge the jury that if it was found from the evidence that the vendee merely went into the store and directed one of the clerks who had formerly worked for the vendor to take charge of said stock of goods and commence selling them at cost, such possession would amount to no more than a constructive change of possession and would not amount to such immediate delivery and actual and continued

possession of the things transferred as is contemplated and required by section 2775 of Wilson's Revised and Annotated Statutes of 1903.

(Syllabus by the Court.)

*Error from Pittsburg County Court; R. W. Higgins, Judge.*

Action by the Ellet-Kendall Shoe Company against Mac H. Ross, in which Butler C. Brewin intervened. Judgment for intervener, and plaintiff brings error. Reversed and remanded.

*Wm. H. Fuller* and *Geo. M. Porter,* for plaintiff in error.

*B. P. Hammond* and *P. S. Lester,* for defendants in error.

HAYES, J. Plaintiff in error brought this action in the county court of Pittsburg county against defendant in error, Mac H. Ross, to obtain a judgment on an open account and a writ of attachment to enforce the payment of same. The attachment was sued out upon affidavit which alleged, among other things, as a ground therefor that the debtor was about to or had disposed of his property with intent to cheat, hinder, and delay his creditors. The writ of attachment was levied upon a stock of general merchandise. Thereafter, defendant in error, Butler C. Brewin, intervened in the action by filing his interplea therein in which he alleges that he is the owner of the merchandise attached by reason of having purchased same from defendant in error Ross prior to the attachment, for a valuable consideration, and prayed for a dissolution of the attachment; and that he have judgment for possession of the property. To this interplea plaintiff in error filed an answer in which he denies that Brewin is the owner of the property attached, and alleges that said pretended sale from Ross to him was made with intent to defraud, hinder, and delay the creditors of Ross; and that the sale was void as against plaintiff's attachment, for the reason that it was made in violation of the territorial statute of 1903, entitled "An act regulating the sale of merchandise in bulk." Sess. Laws 1903, p. 249. Defendant in error Ross appeared and confessed judgment on the account, and a trial to a jury was had upon the issues formed by the interplea and answer thereto, which resulted in a verdict and judgment in

favor of defendant in error Brewin, the interpleader. To reverse this judgment, this proceeding in error is prosecuted.

The principal assignments of error urged for reversal of the cause challenge the correctness of certain instructions given, or the correctness of the ruling of the court in refusing to give instructions requested. Prior to November 25, 1907, Ross for some time conducted a general merchandise business in the town of Krebs, in Pittsburg county, under the name of Krebs Mercantile Company. He was sole owner of the business. On that date he sold his stock of goods in bulk to defendant in error Brewin. The purchaser did not conduct the transaction by which the sale was made, but acted through his brother and agent, J. J. Brewin. Section 1 of the territorial act regulating sales of merchandise in bulk above referred to provides that where a sale of stock of merchandise is made in bulk or otherwise than in the ordinary course of trade, the same will be presumed to be fraudulent and void as against the creditors of the seller, unless the seller and purchaser shall together within a stipulated time before the sale make a full inventory, and unless the purchaser shall, at least 10 days before the sale, in good faith make full and explicit inquiry of the seller as to the names and residences of all the creditors of the seller and the amount he owes each of them; and shall, 10 days before the sale, in good faith notify or cause to be notified by registered mail each of said creditors of whom the purchaser has knowledge or can with exercise of reasonable diligence acquire knowledge, of the proposed sale. None of the things required by this statute to be done by the seller and purchaser or by either of them was done.

Evidence was introduced by defendants to show that the sale was not made with intent to defraud, hinder, or delay the creditors; and that the interpleader purchased in good faith. The court gave to the jury the following instruction:

"The court further charges the jury that without actual fraud in the transfer, no attachment will lie. The suing out of an attachment is purely a statutory proceeding and must be confined strictly upon these grounds upon which the stat-

ute permits it to lie; that is to say in this case to an actual fraudulent disposition of the stock of goods in question. So, if you should find in this case that Mr. Brewin, the interpleader, acting through his brother and agent, bought the goods in question from the defendant Mr. Ross in good faith, that the transaction was without fraud to creditors and honest and fair between them, then you should find in favor of the interpleader, Mr. Brewin."

Plaintiff in error complains of the foregoing instruction and of another instruction of similar import, because by them the jury was charged, without actual fraud in the transfer, no attachment would lie; the effect of his contention being that a sale in bulk by the debtor of his stock of merchandise without observing the mandates of the statute of 1903 regulating such sales constitutes constructive fraud which will sustain an attachment by the debtor's creditors. Plaintiff in error has misconceived the effect of the statute. The statute does not make a sale in bulk when not made in conformity with its requirements fraudulent and void, but makes the fact of such sale being made in violation of its requirements sufficient evidence of actual fraud in the transaction to create a legal presumption of such fraud and shifts the burden of proof to the debtor or to one claiming under the sale to show that there was no fraud. The presumption created by the statute may be overcome by opposing evidence, tending to show that the sale was made without fraudulent intent or that the purchaser bought the goods in good faith without notice of any fraud or fraudulent intent, or of facts that would charge him with such knowledge; and the statutory presumption may be supplemented and strengthened by affirmative evidence showing that there was actual fraud. *Williams v. Fourth National Bank,* 15 Okla. 477, 82 Pac. 496, 2 L. R. A (N. S.) 334.

The jury was charged by other instructions of the court that the failure of the seller and purchaser in this case to observe the requirements of the act of 1903 shifted the burden of proof upon them to establish by a preponderance of evidence that the sale was made in good faith and without any intention upon their part to defraud, hinder or delay the creditors of defendant Ross. These

instructions in connection with the ones complained of correctly stated the law applicable to this phase of the case, and are as favorable to plaintiff as he was entitled.

Plaintiff requested the court to give an instruction which, among other things, charged as follows:

"We cannot know just what is in a man's mind at such a time (referring to the time of the sale), and the law has laid down the rule that the intent shall be adjudged from the legal consequences which naturally result from such an act or sale, and it makes no difference if the transaction was executed in actual good faith and without any desire to defraud creditors; if, however, its legal effect was to work a hindrance or delay on the rights of any of the creditors of the vendor, it will be deemed fraudulent as an inference of law without reference to the motives which prompted it."

Whatever application this instruction might have, if this controversy had been solely between the debtor and his creditors, it does not correctly state the law in this case where the rights of one claiming to be a *bona fide* purchaser are involved. The instruction as requested left out of consideration all the elements necessary to establish bad faith on the part of the purchaser. The transfer is not fraudulent and void as to the purchaser who has paid the purchase price, although fraudulent and void as between the debtor and his creditors, unless at the time or before the making of the transfer and paying the consideration the transferee has knowledge of the fraud and participates therein, or has notice of such facts and circumstances as would arouse the suspicion of an ordinarily prudent man, and cause him to make inquiry as to the purposes for which such transfer is being made, which would disclose the fraudulent intent of the maker. *McFadyen et al. v. Masters,* 11 Okla. 16, 66 Pac. 284; *Kansas Moline Plow Co. v. Sherman,* 3 Okla. 204, 41 Pac. 623, 32 L. R. A. 33; 20 Cyc. 465.

Section 2775 of Wilson's Rev. & Ann. St. 1903 provides that every transfer of personal property by a person having at the time possession and control of the same, which is not accompanied

by immediate delivery and followed by an actual and continued change of possession of the property transferred, is conclusively presumed to be fraudulent and void as against those who are the seller's creditors, while he remains in possession, and the successors in interest of such creditors. Said section was read by the court to the jury, and the following instruction thereunder given:

"Under this section it makes the transfer conclusively fraudulent, where it is not followed by an actual and continued change of possession; and the matter of intent here is not ingredient of the fraud. It makes no difference what the intent may be under this section, whether it is good or bad. The law has prescribed the rule, regardless of any intent, and that rule is: That the transfer is fraudulent unless accompanied by an actual and continued change of possession of things transferred; this means that the possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the party purchasing the goods. It must be such as to give evidence to the world of the claims of the new owner. He must, in other words, be placed in and remain in the usual relation to the property which owners of goods occupy to their property."

Plaintiff requested the court to add to the foregoing instruction the following clause: "So that a stranger to the sale would be able at once to see that a change in the possession and ownership of the property had taken place." This instruction was refused. We think it correctly states the law, and no error would have been committed if it had been given; but that portion of the instruction given and quoted above which charges the jury that the change of possession must be such as to give evidence to the world of the claims of the new owner; and that the new owner must be placed and remain in the usual relation to the property which owners of goods occupy to their property is sufficiently comprehensive to include the instruction requested; and it is not error to refuse an instruction requested, although correctly stating the law, if the same instruction or its equivalent has been embodied in another charge. *Finch et al. v. Brown et al.,* 27 Okla. 217, 111 Pac. 391.

Plaintiff also requested the court to instruct the jury as follows:

"The court further instructs you that if you find from the evidence that the vendee merely went into the store and directed one of the clerks, who had formerly worked for the vendor, to take charge of said stock of goods and commence selling them at cost, such possession would amount to no more than a constructive change of possession, and would not amount to such an immediate delivery 'and actual continued possession of the things transferred,' as is contemplated by the statutes of Oklahoma, section 2775, which I have read to you."

This instruction was also refused. Plaintiff introduced evidence tending to show substantially the following facts: Defendant in error Ross is an attorney; he gave but little, if any, attention to the management and supervision of his mercantile business; he had his law office in the same building, on the same floor and in the same room occupied by the mercantile business, and he was continually present therein both before and after the sale, but devoted his time to his legal business. The mercantile business was principally in charge of a clerk, who was aided by the wife of Ross. Immediately after the sale, which was made without any inventory, interpleader's agent turned the stock over to the same clerk who had theretofore had charge of it, with instructions to sell the goods at not below cost. The stock of goods remained in the same building; there was no change in the signs upon the building; the business was thereafter conducted in the same name as before the sale; the horse and wagon of Ross that had been used before the sale to deliver goods continued to be used after the sale to deliver them. Mrs. Ross at times was in the store and sold goods. Mr. Ross himself at one time assisted in selling goods. The stock continued, until within four or five days before the levy of attachment was made, in the direct charge and supervision of this clerk, who had been the manager of Ross, when a new clerk was placed in the store, but the old clerk continued to visit the store and assisted and instructed the new clerk about the business.

There is some conflict in the evidence as to what extent the

old clerk remained in charge of the business, and Mr. and Mrs.
Ross participated in conducting it after the sale; but there is
evidence reasonably tending to prove in substance the facts above
stated. It is admitted that the contract of sale provided that
the vendee should immediately sell out the stock of goods; and
that all sums received by him therefor in excess of $1,500, the
agreed purchase price, and the necessary expenses of selling the
goods, should be paid over to the vendor, Ross. We think under
this state of the evidence that the refusal of the instruction re-
quested was prejudicial error. It is held by eminent authority
and upon sound reason, under statutes the same or similar to the
one now under consideration, that where the only change of pos-
session made is that the vendee places the purchased property in
possession of the previously recognized agent of the vendor to re-
main in his possession and control the same as before the sale oc-
curred, that the appearance to the world is the same as though
the vendor himself remains in possession, and the change of pos-
session is not of that character required by the statute in order to
prevent the sale from being presumed fraudulent and void as
against creditors of the vendor who are his creditors while he
remains in possession. *Mosgrove v. Harris*, 94 Cal. 162, 29 Pac.
490; *Martin v. Duncan*, 156 Ill. 274, 41 N. E. 43; *Bank v. Gil-
bert*, 174 Ill. 485, 51 N. E. 584, 66 Am. St. Rep. 306; *Coombs
v. Collins*, 6 Idaho, 536, 57 Pac. 310. See, also, bearing upon
this question, but not directly in point, *Love et al. v. Hill*, 21
Okla. 347, 96 Pac. 623; *Walters v. Ratliff*, 10 Okla. 262, 61 Pac.
1070. The statute demands that in order that such sale may be
*bona fide*, it shall be accompanied by immediate delivery and such
actual and continued change of possession as shall indicate by
outward, open, actual and visible signs that can be seen and known
to the public or persons dealing with the property that a change
of ownership and possession has taken place.. *Sharon v. Shaw*,
2 Nev. 289, 90 Am. Dec. 546, is a case in point, in which the
following language is used in the opinion:

"As to the property kept in the cellar of the boarding house,

there seems to have been no such delivery and change of possession as the law contemplates. That portion of the property was not on the premises conveyed by the deed, and the key to the cellar where it was kept was not delivered with the others, but remained in the possession of the servant until it was taken from her by the sheriff. The boarding house not being included in the deed of conveyance, of course continued to be the property of Tregloan. The servant which he had employed before the sale continued in possession of the house and the personal property in the cellar. There was no change or apparent change of the possession of that portion of the personal property. Everything remained the same after as before the sale, and the fact that that house had not been conveyed by the deed would of itself raise the presumption that no change had taken place as to it, or the property in it. As to that portion of the property, nothing was done towards a change of possession, except the notification of the servant who had charge of it, that it had been sold, and the employment of.her in the same capacity by the plaintiff."

The equivalent of the instruction refused was not included by the court in the other instructions given. The general charge "that the transfer is fraudulent unless accompanied by an actual or continued change of possession of things transferred; this means that the possession must be open and unequivocal, carrying with it the usual marks and indication of ownership by the party purchasing the goods. It must be such as to give evidence of the claims of the new owner,  * * *" is not tantamount to telling the jury that if they found that the only change of possession was the placing in control of the goods one of the clerks who had theretofore worked for the vendor, and had charge of the goods, such change of possession would not meet the requirements of the statute; for, under the general charge the jury was at liberty to find or not find as a fact that such acts were the usual marks and indications of ownership by the party purchasing the goods; and that it gave or did not give evidence to the world of the claims of the new owner. But the courts have said that as matter of law such act does not constitute the immediate delivery and change

Vol 28—45

of possession required by the statute, and plaintiff was entitled to this instruction.

Several assignments of error are made complaining of the admission of evidence. We have examined all of them and find that they are either without merit, or, if erroneous, they were not prejudicial under the issues and evidence in the case, and we therefore forbear considering them at length.

For the error indicated, the judgment of the trial court is reversed, and the cause remanded.

All the Justices concur.