## GALBRAITH *et al.* v. OKLAHOMA STATE BANK.

No. 2270.    Opinion Filed October 23, 1912.

Rehearing Denied February 11, 1913.

(130 Pac. 541.).

1. JUDGMENT—Default Judgment—Setting Aside. Where a case against two defendants is called in its regular order, and one of them fails to appear, and the other appears and states that he has no defense to the action, and the court hears the evidence offered on the part of plaintiff and renders judgment for plaintiff, it is not error to refuse to set aside the judgment, although there was an answer on file at the time, and though the record of the judgment states that defendants had failed to appear and plead, answer, or demur, and were adjudged in default.

2. FRAUDULENT CONVEYANCES — Transactions — Invalidity — Transfers of Stock in Trade—Presumption. Under the provisions of section 7908, Comp. Laws 1909, a sale of merchandise in bulk is presumed to be fraudulent and void, and this presumption can be rebutted only by the transferee showing that at least ten days before the transfer in good faith he made full and explicit inquiry of the transferrer as to the names and addresses of each and all of his creditors, and that he demanded and received from the transferrer at least ten days before such transfer a list of names and addresses of all the creditors of such transferrer, showing the amount owing each, which statement was sworn to by such transferrer and which contained a declaration that it was a correct list of all his creditors, with the postoffice address of each and the amount owing each, and that at least ten days before such transfer he notified or caused to be notified of such proposed transfer, personally or by registered mail, each of the creditors of the transferrer of whom he had knowledge or could, with the exercise of reasonable diligence, acquire knowledge, and that such purchase was made by him in good faith for a fair consideration actually paid.

3. SAME. This presumption can be taken advantage of by any creditor of the transferrer, although his debt was in existence

before the transferrer acquired the stock of merchandise, and although none of the consideration for the debt went into the stock.

4.    SAME—Remedies of Creditors—Attachment.    A failure to comply with the statute raises such a presumption of fraud as will justify the attachment of the stock in the hands of the transferee.

(Syllabus by Rosser, C.)

*Error from Pottawatomie County Court;*
*J. H. Woods, Judge.*

Action by the Oklahoma State Bank against Oliver Galbraith and another, and R. M. Galbraith intervenes. Judgment for plaintiff against defendants and against the interpleader sustaining an attachment of property claimed by him, and defendants and interpleader bring error. Affirmed.

*H. H. Smith* and *W. T. Williams,* for plaintiffs in error.

*Lydick & Eggerman,* for defendant in error.

Opinion by ROSSER, C. The parties to this action are designated in this opinion in the same way as in the lower court.

In 1907 the defendant E. F. Galbraith jointly with the defendant Oliver Galbraith executed to the plaintiff the note sued on in this action. Some time after the note was given, he bought a stock of merchandise from the interpleader, R. M. Galbraith, and gave his note in payment of the purchase price, and assumed certain indebtedness of the business. He did not make a success of the business, and after some time he sold the stock back to the interpleader. The interpleader surrendered to him the note which he had given for the purchase price of the stock, and also paid the debts that were owing for the merchandise in the store, but did not pay the note upon which this suit was brought. In the sale of the stock back to the interpleader, neither the defendant E. F. Galbraith, nor the interpleader, R. M. Galbraith, made any attempt to comply with the provisions of section 7908, Comp. Laws 1909 (Laws 1907-08, p. 557). That section is as follows:

"The transfer of any portion of a stock of goods, wares or merchandise otherwise than in the ordinary course of trade, in the regular and usual prosecution of the transferrer's business, or

the transfer of an entire such stock in bulk shall be presumed to be fraudulent and void as against the creditors of such transferrer and such presumption may be rebutted only by a proposed transferee showing that at least ten days before the transfer, and in good faith, he made a full and explicit inquiry of the transferrer as to the names and addresses of each and all of his creditors, and that he demanded and received from such transferrer at least ten days before such transfer a list of names and addresses of all of the creditors of such transferrer, showing the amount owing each, which statement must be sworn to by such transferrer and shall include a declaration that (it) is a correct list of all of his creditors with the post-office address and the amount owing each; and that, at least, ten days before such transfer he notified or caused to be notified, of such proposed transfer, personally or by registered mail, each of the creditors of the transferrer of whom such transferee had knowledge or could, with the exercise of reasonable diligence acquire knowledge; and that such purchase was made by him in good faith for a fair consideration, actually paid." (Sess. Laws 1907-08, p. 557.)

The plaintiff bank sued and attached the merchandise in the hands of R. M. Galbraith. There was a judgment for plaintiff, and defendants and interpleader have appealed. The case was tried to the court, who made special findings of fact. The court found that section 7908 was not complied with. He found that the interpleader did not use reasonable diligence to learn of its existence. The court further found, in substance, that the sale of the stock by E. F. Galbraith to the interpleader was made in actual good faith for a valuable consideration, and without any intent on the part of either purchaser or seller to hinder, delay, cheat, or defraud the creditors of E. F. Galbraith. The court rendered judgment by default against the defendants for the amount of the debt, and sustained the attachment.

The defendant assigns as error the action of the court in rendering judgment by default. It is not necessary to decide whether a judgment by default was error or not. However, the answer was due on the 4th of October, and was not filed until November 26th, and then without leave of the court. Some of the minutes on the judge's bench docket are attached to the case-made for the purpose of showing that the answer was filed

by leave of the court, but the minutes on the bench docket are for the convenience of the judge, and cannot be considered for the purpose of contradicting the recitals of the judgment on the record. *Cockrell v. Schmitt,* 20 Okla. 207, 94 Pac. 521, 129 Am. St. Rep. 737. The record of the judgment, as it appears on the journal, shows that the case came on in its regular order, that the defendants were called and failed to appear, and that the court heard evidence, including the oral testimony of witnesses, and thereupon rendered judgment. Even though the court had considered the answer as filed, unless the defendants had appeared and offered proof of the allegations, the plaintiff would have recovered just the same when it proved its case. But the order overruling the motion for new trial shows that the answer was filed out of time without leave of court, and also shows that one of the defendants, E. F. Galbraith, by his attorney, represented to the court at the time the judgment was entered that he owed the note, and that he had no defense to it. Even though a technical judgment by default had been improper under the circumstances, it was not error to render some sort of judgment for plaintiff. The defendants knew of the pendency of the action, and one of them was present, and offered no defense, and made no request for time in which to do so.

The principal question involved in this case is as to the effect of the failure to comply with section 7908, Comp. Laws 1909, above. It is contended that the failure to comply with the terms of the statute was only *prima facie* evidence of fraud and did not raise a conclusive presumption, and that the court having found as a matter of fact that, notwithstanding the failure to comply with the statute, the sale was not in fact fraudulent, the attachment should have been dissolved. It was held by this court in the case of *Ellett-Kendall Shoe Co. v. Ross,* 28 Okla. 697, 115 Pac. 892, following *Williams v. Fourth Nat. Bank,* 15 Okla. 447, 82 Pac. 496, 2 L. R. A. (N. S.) 334, 6 Ann. Cas. 970, that the Act of 1903, regulating the sales of stocks of merchandise in bulk, did not render a sale made in violation of that statute conclusively fraudulent and void, but that the failure to comply with such statute only created a rebuttable presumption

that such a sale was void.   But the sale in question here was governed by section 7908, quoted above.   The language of the statute is different from the Act of 1903, and more stringent in its terms.   Act 1903, p. 249, provided that:

"A sale of any portion of a stock of merchandise . * * * will be presumed to be fraudulent and void as against the creditors of the seller, unless the seller and purchaser together shall at least five days before the sale make a full and detailed inventory," etc.

Section 7908, Comp. Laws 1909, provides that:

"The transfer of any portion of a stock of goods, wares and merchandise otherwise than in the ordinary course of trade, * * * shall be presumed to be fraudulent and void as against the creditors of such transferrer, and such presumption may be rebutted only by a proposed transferee showing that at least ten days before the transfer, and in good faith, he made a full and explicit inquiry of the transferrer as to the names and addresses of each and all of his creditors," etc.

The Act of 1903 is not as stringent as the later act.   Under the provisions of section 7908, the presumption of fraud arises whenever there is a sale in bulk.   This presumption can only be rebutted by showing a compliance with the provisions of the act. The presumption is conclusive unless the provisions of the act are complied with.   This is the plain meaning of the language used.   As a failure to comply with the act raised the conclusive presumption that the sale was fraudulent, no evidence of good faith was competent, and the finding of the court that the sale was in fact in good faith and without a fraudulent intent was not supported by competent evidence, and must be disregarded. The court probably heard the testimony and made the finding, so that the question could be properly presented here.   He did not err in declining to permit the judgment to be controlled by the finding.

It is contended that as the debt upon which suit was brought was in existence before E. F. Galbraith bought the stock, and as the credit was not obtained upon the faith of his ownership of the stock, the plaintiff cannot take advantage of the failure to comply with the statute.   But the statute provides that sales in

bulk shall be presumed to be fraudulent and void as against creditors of the transferrer. There is nothing in the statute which justifies a holding that it does not apply in favor of all creditors. In the state of Indiana an act of the Legislature, similar to that here construed, provided that only those creditors who had sold goods or loaned money to go into the business were entitled to its benefits. In the case of *McKinster v. Sager,* 163 Ind. 671, 72 N. E. 854, 68 L. R. A. 273, 106 Am. St. Rep. 268, the statute was held unconstitutional because only a portion of the seller's creditors were entitled to its benefits. It was held, upon what seems to be unassailable grounds, that the Legislature could not discriminate between creditors. It is to be presumed that our Legislature knew of the legislation in Indiana and of the action of the Supreme Court there, and that the benefits of the act were extended to all creditors in order to avoid the question of the unconstitutionality of the act upon this ground.

Finally, it is contended that the sale without compliance with the act, while a legal or constructive fraud, does not furnish grounds for attachment. But it is believed the violation of the act is sufficient proof of fraud to justify an attachment. The eighth ground of the attachment, set forth in section 5701, Comp. Laws 1909, is where the defendant "has assigned, removed, or disposed of, or is about to dispose of his property, or a part thereof, with the intent to defraud, hinder or delay his creditors." Section 7908, Comp. Laws 1909, provides that sales without compliance with its provisions shall be presumed to be fraudulent and void. The effect of this language is to dispense with proof of fraud. When fraud is proven attachment will lie. Under this statute, when its terms have not been complied with, the plaintiff, without making further proof, stands just as he would after making proof of actual fraud. In *Love, Sheriff, v. Hill,* 21 Okla. 347, 96 Pac. 623, it was held, in effect, that a transfer of personal property, not accompanied by immediate delivery and actual and continued change of possession as required by Wilson's Rev. & Ann. St. 1903, sec. 2775 (section 2933, Comp. Laws 1909), was ground for attachment. In *Ellett-Kendall Shoe Co. v. Ross,* 28 Okla. 697, 115 Pac. 892, which was a proceeding

by attachment, there are no expressions of the court indicating that attachment was not the proper proceeding. In *Williams v. Fourth Nat. Bank,* 15 Okla. 477, 82 Pac. 496, 2 L. R. A. (N. S.) 334, 6 Ann. Cas. 970, the court holds that under the Act of 1903 the presumption of fraud may be rebutted, and that, when it is, the attachment should be dissolved. The reverse then must be true, that, until the presumption is overthrown, there are grounds for attachment. Under the act now in force, the presumption can be overthrown only by showing a compliance with its terms. That is not shown in the present case, and therefore the sale in contemplation of law was fraudulent, and the attachment lies. In *Cook v. Burnham,* 3 Kan. App. 27, 44 Pac. 447, it was held that, where an insolvent debtor made a disposition of his property inhibited by law, an attachment should be sustained, whether there was an actual fraudulent or corrupt purpose or not. In the course of the opinion the court said:

"Then there is an actual transfer of the property, the natural and necessary consequence of which is to place obstacles in the way of creditors, and to hinder and delay or defraud them in the collection of their claims.. The law conclusively presumes that such consequences were intended. Being intended through the doing of a voluntary act, which is, under the circumstances, unlawful, the law condemns the act as fraudulent. Law writers and courts have said much about fraud in law as distinguished from fraud in fact, creating no little confusion often by the different meanings attached to the terms, and given rise to at least apparent inconsistencies in decisions. But in most cases any differences of opinions are more seeming than real. It is of little importance whether it be said that a certain transaction is a fraud in law, or whether as is probably more nearly correct, it be simply held when viewed under the law, to be conclusive evidence of a fraudulent intent."

To the same effect is *Curran v. Rothschild,* 14 Colo. App. 497, 60 Pac. 1111; *Martin v. Duncan,* 156 Ill. 274, 41 N. E. 43. In *Rothschild Bros. v. Trewella,* 36 Wash. 679, 79 Pac. 480, 68 L. R. A. 281, 104 Am. St. Rep. 973, a creditor who had sold a stock of goods without complying with the bulk sales law brought an action against the purchaser to recover the debt the

seller owed him. The court, in the course of the opinion holding that he could not recover, said:

"It seems to be firmly established that the only remedy which the law affords a creditor against a fraudulent transfer of property by his debtor is to sue his debtor, and reach the property fraudulently transferred by attachment or garnishment. These remedies would seem to be adequate in all cases where the subject of the transfer is tangible personal property."

In arriving at the conclusion that this case must be affirmed, the writer feels constrained to say that the result does not conform to his notions of justice. But the mandate of the Legislature must be followed, and, if the law they have written results in hardships, it cannot be helped. The Legislature, in their desire to prevent dishonest men from defrauding their creditors, have enacted a law which is a trouble and annoyance to honest retailers desiring to sell, and which (as in this case) results in injustices in individual cases, but the court must follow the reasonable construction of a statute, though it leads to hardship in some cases.

The judgment should be affirmed.

By the Court: It is so ordered.